G. D. PERRY ET AL. v. COMMISSIONERS OF BLADEN.

(Filed 26 April, 1922.)

1. School Districts — Taxation — Consolidation—Statutes—Nonlocal Tax Districts—Elections—Constitutional Law.

The combination or consolidation of local school tax districts with territory that has not voted a special tax for the purposes of schools must fall within the provisions of C. S., 5530, whereby the proposed new territory is required to vote separately upon the question of taxation, in conformity with our Constitution, Art. VII, sec. 7.

2. Statutes—Interpretation—In Pari Materia—School Districts.

The various statutes relating to the establishment of local school tax districts with regard to approval of the voters will be so construed by the courts as to harmonize their provisions, when possible, and give to each and every one its proper significance, if such can fairly and reasonably be done.

3. School Districts—Consolidation—Statutes—Taxation—Outlying Territory—Election—Constitutional Law.

The application of the provisions of C. S., 5526, to the formation of new local school tax districts without regard to township lines, etc., refers primarily to instances where new districts are created or formed, as therein prescribed, out of territory exclusive of special tax districts, or out of territory having the same status throughout its entirety, in relation to the then existing school tax or taxes, so as to give every voter a fair chance, uninfluenced by other considerations, to declare with his ballot whether or not he wishes to be taxed for the creation and maintenance of the district proposed.

4. Same—High Schools.

In this case is presented the question of a combination of several local school tax districts with a further territory within which no special school tax has been voted, C. S., 5530, and the question of the establishment of a central high school for a given township, under C. S., 5511, is not presented.

5. Same—Amendatory Statutes.

The authority given the county board of education to redistrict the entire county or part thereof, and to consolidate school districts, etc., C. S., 5473, is amended by Public Laws of 1921, ch. 179, providing, among other things, for such consolidation of existing districts under a uniform rate of taxation not exceeding the lowest in any one district; meets the requirements of our Constitution, Art. VII, sec. 7, but to the extent the amendatory statute permits consolidation of local school tax districts with adjacent territory or local schools that have never voted any tax, the provisions of C. S., 5530, must apply so as to permit those living in such proposed new territory to vote separately upon 'the question of taxing themselves for the purpose.

6. Same.

The provisions of Public Laws of 1921, sec. 1, ch. 179, authorizing local school tax districts "to vote special tax rates for schools on the entire district according to law" apply to future levies after the consolidation of the original districts, or after the unification of the different tax rates have been affected in accordance with our organic and valid statutory law in pursuance therewith.

7. Same—Equal Taxation—Debt.

Where the county board of education, acting under the provisions of C. S., 5473, amended by Public Laws of 1921, ch. 179, attempt to consolidate a local school tax district with nonlocal tax districts, *semble*, C. S., 5531, 5532, would apply, whereunder no such special tax district may be established "when it is in debt in any sum whatsoever": *Held*, there should be an election held separately for the voters of the new territory to pass

upon the question of taxing themselves, for the purposes of the proposed district under the provisions of C. S., 5530.   *Riddle v. Cumberland*, 180 N. C., 321, cited and distinguished.

APPEAL by plaintiffs from *Kerr, J.*, at the October Term, 1921, of BLADEN.

Civil action to enjoin and perpetually restrain the defendants from levying and collecting a special school tax, authorized by a vote of the people in a new and proposed consolidated district of what was originally three contiguous and adjacent school districts in Bladen County, namely, Council, a local tax district, and Carver's Creek and Boggy Branch, non-local tax districts.   A majority of the voters in the two districts last named voted against levying the special tax here called in question, but the tax was carried in the entire territory voting as a unit.

From a judgment denying the relief sought and adjudging the tax to be valid and legal, the plaintiffs appealed.

*R. D. Dickson for plaintiffs.*
*Henry L. Williamson and J. Bayard Clark for defendants.*

STACY, J.   The facts of this case, briefly stated, are as follows: Council, Carver's Creek, and Boggy Branch have been for many years and were up to 6 June, 1921, when consolidated by the board of education of Bladen County, three contiguous and adjacent school districts, occupying and covering a large portion of Carver's Creek Township, which township covers the entire southeastern end of Bladen County from the Cape Fear River to the Columbus County line.

In the year 1905 a special tax election for schools was held in the old Council District, and a tax of 30 cents on the $100 valuation of property and 90 cents on the poll was voted and carried.   This tax, by another election held in said district in 1920, was increased to 50 cents on the $100 valuation of property and $1.50 on the poll.   Also, there was held in the year 1917 in said old Council District a school bond election and a tax of 15 cents on the $100 valuation of property and 45 cents on the poll to pay interest, and to create a sinking fund on account of said bonds, was voted and carried, which tax has been levied and collected annually in said district since that time; the bonds issued by authority of said election being due to mature in 1922, one year after the date of election herein contested.

While this was the status of the old Council School District with reference to taxes, the Carver's Creek and Boggy Branch districts had never voted a special school tax of any kind prior to the date of the election herein contested.

One 6 June, 1921, the board of education of Bladen County combined these three districts into one consolidated district; and on the same day it caused to be ordered an election in said consolidated district on the question of voting a special tax of 30 cents on the $100 valuation of property and 90 cents on the poll, "to supplement the public school fund to be apportioned by the county board of education to said consolidated district," which election was held on 18 July, 1921, and carried by a majority of the voters in the entire territory, and this is the election which the plaintiffs contest.

While the vote in the instant election was taken without regard to the former lines of the old school districts, yet, as a matter of fact, a majority of those residing in the territory of the original nonlocal tax districts of Carver's Creek and Boggy Branch voted against the levy now sought to be enjoined.

It is conceded that prior to the enactment of Public Laws 1921, ch. 179, the present consolidated district could not have been formed except as provided by C. S., art. 18, ch. 95; and in *Paschal v. Johnson, ante,* 129, decided intimation is given that where local tax districts are sought to be combined and joined with nonlocal tax districts, or nonspecial tax territory, the question should be considered and dealt with as an enlargement of districts already existing under C. S., 5530, whereby the outside territory is allowed to vote separately on the proposed tax. And such is the holding in *Hicks v. Comrs.,* just decided.

In construing these different statutes, relating to the same subject-matter, as they do, it is our duty to reconcile and to harmonize them, if possible, and at the same time to give to each and every one its proper significance, if such can fairly and reasonably be done. *Cecil v. High Point,* 165 N. C., 431.

For the sake of clearness, it may be well to note just here that the procedure authorized by C. S., 5526, would seem to refer, and apparently was intended to apply, primarily to cases where new districts are created, or formed, in the manner prescribed therein, out of territory exclusive of special tax districts, or at least out of territory having the same status throughout its entirety, so far as concerns the then existing school tax or taxes. Under these circumstances every voter is given a fair chance, uninfluenced by other considerations, to declare with his ballot whether or not he wishes to be taxed for the creation and maintenance of such a district. To allow this section to be called into operation under any other conditions would be to introduce different considerations for popular approval in different sections of the district, and this no doubt would have a tendency to retard rather than to promote the cause of education and the establishment of better schools. At any rate, such would seem

to be the legislative intent as gathered from a careful reading of the section. *Hicks v. Commissioners, post,* 394; *Howell v. Howell,* 151 N. C., 575; *Gill v. Comrs.,* 160 N. C., 177; *Chitty v. Parker,* 172 N. C., 126. In the case at bar different issues were being voted upon by different portions of the consolidated district. In the old Council District the sole question was not whether the voters in that district should continue a special tax for schools, but, for them, the success of the election meant a reduction of 20 cents on the $100 valuation of property and 60 cents on the poll; and for the voters of the old Carver's Creek and Boggy Branch districts it meant the imposition of an entirely new and special tax. The people in the nonlocal tax districts of Carver's Creek and Boggy Branch were outvoted by the practically unanimous vote cast in the old Council District. We do not think the Legislature intended that the school law should be executed in this way.

Possibly it would be well to observe, also, that we are not now considering the proposed establishment of a central high school, or high schools, in a given township, as provided by C. S., 5511. *Woosley v. Comrs.,* 182 N. C., 429.

We then come to a consideration of C. S., 5473, as amended by Public Laws 1921, ch. 179. It will be conceded, at the outset, that the amendment of 1921 is somewhat ambiguous and its application is not altogether free from difficulty. But regardless as to how we may be able to adjust its provisions to preëxisting statutes, in all events, they must be made to square with the requirements of the Constitution, or else disregarded. Prior to the enactment of this amendment the only procedure whereby a special tax district could be enlarged was under C. S., 5530. This gave the voters residing in the nonlocal tax territory a separate vote on the question. The statute just mentioned provides: "In case a majority of the qualified voters in such new territory shall vote at the election in favor of a special tax of the same rate as that voted and levied in the special tax district to which the territory is contiguous, then the new territory shall be added to and become a part of the special tax district. . . . In case a majority of the qualified voters at the election shall vote against the tax, the district shall not be enlarged."

But Public Laws 1921, ch. 179, sec. 1, provides that county boards of education may consolidate local tax districts, including special chartered districts, with other local tax districts having the same or different special tax rates, and also with nonlocal tax districts, but the rate on any consolidated district created from local tax districts having different local tax rates shall be made uniform by the county commissioners upon the recommendation of the county board of education. Again, "no taxpayer in such consolidated district shall be required to pay a higher special tax rate than that voted originally in his district." It is further

provided that such consolidated districts, as are authorized by said act, shall be permitted "to vote special tax rates for schools on the entire district in accordance with law."

This last clause, we apprehend, has reference to future levies after the consolidation of the original districts and the unification of the different tax rates have been effected, and not perforce to an election for the purpose of accomplishing consolidation and fixing the rate of tax. The preceding clause of the act above mentioned undertakes to provide for securing uniform rates for consolidated districts, created from local tax districts having different local tax rates, and, as now advised, we see no inherent objection to this procedure. *Paschal v. Johnson, supra.* A special tax of some rate, in each case, has already been voted by the people of every portion of the district and the uniform rate, to be fixed by the commissioners, is not to exceed the minimum tax originally voted in any part of the district. The larger tax, previously voted in some other portion of the district, may properly be said to include the smaller tax; and this, we perceive, would suffice to meet the requirements of Article VII, section 7, of the Constitution.

But the statute is silent with reference to fixing the uniform rate or rates where local tax districts, or special chartered districts, are combined with nonlocal tax districts. Just here we have experienced some difficulty in applying the provisions of this enactment of the Legislature. It follows as a matter of course that if the county commissioners cannot establish for any consolidated district a rate of tax higher than that originally voted in any part of said district, and some part has voted no tax at all, then, under the clause requiring that the different rates shall be made uniform, it appears that the commissioners, in such cases, would be required to reduce the tax to nothing; or, to state it differently, in such cases they *ipso facto* would seem to be without any proper authority at all to levy these special uniform taxes throughout the entire district. Indeed, this apparently follows as a necessary corollary, because, under the Constitution and in the manner here provided, such taxes may not be imposed without a favorable majority vote of all the people affected. *Stephens v. Charlotte,* 172 N. C., 564; *Hollowell v. Borden,* 148 N. C., 255; *Smith v. Trustees,* 141 N. C., 143; *Rodman v. Washington,* 122 N. C., 39; *Goldsboro v. Broadhurst,* 109 N. C., 228. For this reason, in cases where local tax districts or special chartered districts are sought to be combined with nonlocal tax districts, we are compelled to invoke the aid of C. S., 5530, and to deal with the question under the principle of enlarging a preëxisting district or districts. *Paschal v. Johnson, supra; Hicks v. Board of Education, supra.*

But if it be contended that the unification of the different tax rates applies only to those cases where local tax districts, including special

chartered districts, are consolidated with other local tax districts having different tax rates, then, in those cases where the consolidation involves the combining of a local tax district or special chartered district with a nonlocal tax district, it would seem that the provisions of C. S., 5531 and 5532, require observance (*Key v. Board of Education,* 170 N. C., 123), or else there should be an election as contemplated by C. S., 5530.

But defendants contend that under the decisions of *Riddle v. Cumberland,* 180 N. C., 321, the instant election should be approved and the validity of the tax in question upheld. The facts of that case were as follows: In 1920 a movement was instituted for the formation of the whole of Gray's Creek Township, Cumberland County, into one township high school district, and also into a special tax district for elementary schools with a tax rate of not more than 30 cents on the $100 valuation of property and 90 cents on the poll. Within said township, and constituting the same, were five school districts; two with special taxes, three without. The petition for said election stated that if said election carried the old special tax districts with their taxes were to be abolished, the new rate to take their place; but if said election failed the old special tax districts were to remain in existence. The election was called on this basis and carried. Several propositions, it will be seen, were embodied in this election; but it appears that they were all clearly understood and fully comprehended by the voters throughout the entire township. However, none of the objects sought to be obtained were opposite and antagonistic by which an appeal to conflicting interests could be made, as in *Hill v. Lenoir Co.,* 176 N. C., 572, and for this reason the election was sustained. Furthermore, with the abolition of the special tax districts, which was one of the propositions submitted to the voters of the respective districts in said election, the entire township was then left in the same condition or status so far as school taxes were concerned; and this, it may be said, paved the way for proceeding under C. S., 5526. While this may have been somewhat irregular, yet, it appearing that such procedure in the particular case was free from any material harm and, having due and proper regard for substance and the accomplishment of results, the election was upheld.

The distinguishing features between the *Riddle case, supra,* and the case at bar may be stated as follows: (1) The case at bar involves a *reduction* in the tax rate of the old special tax district; not so in *Riddle's case.* (2) There a township high school (C. S., 5511) was to be established; not so here. (3) In the present case the old special tax district has voted bonds and is now in debt on account of same. In *Riddle's case* there was no bar to abolishing the already existing special tax districts, and this was specifically provided for in the call for the election. C. S., 5532, provides that no special tax district shall be abolished

when such district is in debt "in any sum whatever." Hence, the con-
clusion reached in the *Riddle case* is not permissible here. The old
Council District, being in debt for bonds previously issued, may not be
abolished until they are paid. Indeed, the holders of such obligations,
being creditors, as they are, may insist upon the levying and collecting
of the amount of taxes authorized at the time of the sale of said bonds.
*Smith v. Comrs.*, 182 N. C., 149.

Finally, the pertinent and controlling facts in the instant case are
substantially the same as those in *Hicks v. Commissioners*, next case
*post*, and for the additional reasons assigned in that opinion—the two
cases being governed by the same principles—it follows that his Honor
below was in error in declining to grant the relief sought. This will be
certified to the Superior Court, to the end that judgment may be entered
for the plaintiffs on the facts agreed or found.

Reversed.