STACY, J., concurring in result.
By virtue of Public-Local Laws of 1921, ch. 131, and the amendments thereto, the defendant ordered an election, in which was submitted to the qualified voters of Guilford County (excepting the city of Greensboro and the township of High Point) the question of levying and collecting an annual special tax for the purpose of maintaining the schools and erecting school buildings in the prescribed territory. A majority of the qualified voters voted in favor of the tax. Thereupon the defendant made known its purpose to levy the tax so authorized, and the plaintiff, on behalf of himself and other taxpayers, instituted this action for the *Page 344 
purpose of enjoining the levy of the tax, and of having the election declared void.
The statement of facts is as follows:
1. That the plaintiff, D. Grant Coble, is a resident of Coble District, in Clay Township of Guilford County, maintaining his residence therein and owning property in said district of said county.
2. That the defendants are the duly elected and qualified commissioners, of Guilford County, charged under the law with the duty of levying and collecting taxes.
3. That prior to 25 April, 1922, there were one hundred and thirteen rural school districts in said county, exclusive of High Point Township and the territory within the city of Greensboro; that of this number 79 were white districts and 34 colored districts.
4. That of the total number of said district on said date there were 35 white local tax districts and 18 colored local tax districts in said territory; and there were 60 nonlocal tax districts which had never voted any special tax for school purposes.
5. That prior to said date one of said local tax districts, known as Jamestown Township, had voted and issued bonds to the amount of $22,500, and that said bonds are still outstanding and unpaid. That the valuation of school property in said Jamestown District on said date mentioned above was more than $50,000; and the valuation of property for taxation within said district for the year 1921 was $1,591,979.
6. That prior to said date ten other local tax districts, constituting Morehead Township, in addition to special taxes, already had voted and issued bonds to the amount of $10,000, which bonds are still outstanding and unpaid. That the valuation of school property in said Morehead District at said time was more than $100,000; and that the valuation in property for taxation within said district for the year 1921 was $15,331,917.
7. That prior to said date three white and one colored local tax districts, in Fentress Township in said county, had also voted taxes and bonds, and had issued bonds to the amount of $8,000, and that said bonds are still outstanding and unpaid. That the valuation of school property within said Fentress District at said time was more than $20,000; and that the valuation of property for taxation for the year 1921 was $1,810,738.
8. That prior to said date three other local tax districts of said county, namely Bessemer, South Buffalo, and Whitsett, in addition to a local tax already voted and levied, had each voted and issued bonds to the amount of $10,000; and that said bonds are still outstanding and unpaid. That the valuation of school property in Bessemer District is more than *Page 345 
$35,000; and that the valuation of property for taxation within said district for the year 1921 was $1,843,077. That the valuation of school property in South Buffalo District is more than $30,000; and that the valuation of property for taxation in said district for the year 1921 was $2,404,979. That the valuation of school property in Whitsett District was more than $25,000; and that the valuation of property for taxation within said district for the year 1921 was $572,272.
9. That prior to said date 27 of said districts had voted and authorized a levy of a special tax of 30 cents on each $100 worth of property; and that a part of said authorized levy and tax had been levied and collected up to and including the year 1921.
10. That prior to said date 8 of said districts had voted a special tax of 20 cents on the $100 worth of property; and that a part of said tax had been levied and collected up to and including the year 1921.
11. That prior to said date 10 of said districts had voted a special tax of 50 cents on the $100 worth of property, and that a part of said tax had been levied and collected up to and including the year 1921.
12. That prior to said date one of said districts, known as Guilford College District, had voted a tax of 33 1/3 cents on the $100 worth of property; and that a part of said tax had been levied and collected up to and including the year 1920.
13. That prior to said date one of said districts had voted a tax of 15 cents, and 3 of said local tax districts had voted a tax of 12 cents on the $100 worth of property; and that a part of the same had been levied and collected up to and including the year 1921.
14. That under Public-Local and Private Laws, Session 1921, ch. 131, as amended by ch. 38, Special Session of 1921, upon written request of county board of education of Guilford County, the board of county commissioners of said county, on 6 March, ordered an election upon the new registration, and after 30 days notice, submitted to the qualified voters of said county, except the city of Greensboro and the township of High Point, embracing all the territory of said local tax district and the nonlocal tax districts, the question of whether there should be levied and collected annually a special tax not exceeding 10 cents on the $100 worth of property, for building purposes, and not exceeding 15 cents on the $100 valuation of property for school maintenance, in addition to the taxes now authorized, except as provided in said act; and that said election was duly held on 25 April, 1922.
15. That there were registered under the new registration for said election, in all of said territory, 5,093 voters, and of this number 2,988 votes, reading as follows: "For Abolishing All Local School Taxes and Adopting a County-wide Equalizing Tax," were cast in favor of the proposition to abolish all school taxes, as set forth in said act. *Page 346 
16. That a majority of the voters of said territory resided in the local tax districts, and that a majority of the votes cast at the said election were cast by the voters residing in said local tax districts; and that the question submitted as aforesaid was determined by the votes cast in the said local tax district, including said bonding districts.
17. That in the township in which the plaintiff D. Grant Coble resides there were 251 qualified voters, and of this number only 68 votes were cast in favor of the proposition, showing a majority of about 183 against it. That in Greene Township there were 252 qualified voters, and only 61 votes were cast for it, showing a majority of 191 against it; and that in S. Madison Township there ware 77 qualified voters, and only one vote was cast for it, showing a majority of 76 against it. That in Morehead, Jamestown, and Fentress, local tax and bonding districts, with 1,050 qualified voters, there were 876 in favor of the proposition.
18. That the tax valuation of property in the territory approving the levy of the tax is $49,465,606, and the valuation of property in the territory not approving the levy of the tax is $10,748,113. That these valuations do not include the property of the railroads and public-service corporations, the total value of which, for taxation, is $5,809,757, and a very large proportion of which is within the townships voting for the levying of said tax, there being considerably less than $1,000,000 of this amount assessed against the railroad and public-service corporations in the townships which voted against said tax.
19. That the value of school property in Clay Township is $7,500; and in Greene Township, $8,500; and in South Madison Township, $2,500.
20. That the board of education of Guilford County has recommended to the board of county commissioners of Guilford County to levy and collect the tax mentioned in said act; and the said board of commissioners have levied said tax for the year 1922, and seek to collect the same.
Judgment was rendered in favor of the defendant, and the plaintiff excepted and appealed.
The object of the action is to test the validity of a public-local law, entitled "An act to equalize school advantages in Guilford County." Public-Local Laws 1921, ch. 131. A summary of the pertinent and material provisions of the act is deemed necessary to an understanding of the nature and scope of the controversy presented in the appeal. Section 1 requires the board of commissioners for the county, upon a written request of the county board of education, to call an *Page 347 
election and, after due notice, to submit to the qualified voters of the county, with the exception of the city of Greensboro and the township of High Point, the question of levying and collecting an annual special tax for building purposes and school maintenance, in addition to the school taxes regularly authorized by the General Assembly. Section 2 provides that if a majority of the qualified voters shall favor the additional school tax, the board of county commissioners shall annually thereafter levy this tax at such rate, not exceeding the fixed maximum, as the county board of education may request; section 3, that the additional tax shall be collected uniformly throughout the designated territory in like manner with other taxes, and, when collected, shall be used by the county board of education for the benefit of the schools in the county, not including those in the excepted city and township; and section 10, that the act shall not in any way interfere with the organization of schools as provided in the general law. Other sections will hereafter be considered in connection with questions to which they are immediately related.
This act, ratified 21 February, 1921, was supplemented by another, authorizing the appointment of two additional members of the county board of education (Public-Local Laws 1921, ch. 375), and was subsequently amended by changing the form of the ballot and increasing the maximum amount of the indebtedness for which provision is made under section 7. Public-Local Laws 1921, Extra Session, ch. 38.
The plaintiff's counsel have earnestly insisted that the act of the General Assembly under which the election was held was enacted in breach of the organic law, and that the defendant was without power to levy the proposed tax. All the questions involved in the appellant's argument may be grouped and considered in connection with the three questions, (1) whether the act referred to is inhibited by Art. II, sec. 29, of the Constitution; (2) whether it conflicts with Art. VII, sec. 7, and (3) whether it violates the provisions of Art. I, sec. 10, of the Constitution of the United States.
1. The first question, then, is this: Does Article II, section 29, inhibit the legislation embraced in chapter 131 of the Public-Local Laws of 1921, and the amendments thereto? The material part of the section is in these words: "The General Assembly shall not pass any local, private, or special act . . . establishing or changing the lines of school districts." It is contended by the plaintiff, as we understand, not that the act of 1921 in express terms purports to change the lines of any of the school districts, but that its necessary effect is to incorporate into one school district the entire county, save the city of Greensboro and the township of High Point. On the other hand, it is contended by the defendant that the act, instead of abolishing the districts either in *Page 348 
terms or by implication, leaves them intact, and merely creates a taxing district for the benefit of the schools in the several districts. In our examination of these contentions we should bear in mind certain principles of statutory construction which, accepted, approved, and reiterated, may be regarded as fixed and fundamental. While it is the function of a Constitution to establish the framework or general principles of government, which are not to be defeated by the application of rules that are purely technical, it is likewise true that the canons ordinarily governing the construction of statutes apply also to the construction of constitutions. We may consider the intent and purpose both of the statute and of the Constitution — the object to be accomplished and the wrong to be prevented or redressed. We should apply the principle that every presumption is to be indulged in favor of the validity of the statute, that the General Assembly is presumed to have acted with an honest purpose to observe the restrictions and limitations imposed by law, and that legislation will be sustained unless its invalidity is "clear, complete, and unmistakable," or unless the nullity of the act is beyond a reasonable doubt. King v. R. R., 66 N.C. 283;Holton v. Comrs., 93 N.C. 435; Lowery v. School Trustees, 140 N.C. 40;Bonitz v. School Trustees, 154 N.C. 379; Williams v. Bradford, 158 N.C. 38;Whitford v. Comrs., 159 N.C. 162. "Every act of the Legislature is presumed to be valid and constitutional until the contrary is shown. All doubts are resolved in favor of the validity of the act. If it is fairly and reasonably open to more than one construction, that construction will be adopted which will reconcile the statute with the Constitution, and avoid the consequence of unconstitutionality. Hence, it follows that the courts will not so construe the law as to make it conflict with the Constitution, but will rather put such interpretation upon it as will avoid conflict in the Constitution, and give it full force and effect, if this can be done without extravagance. If there is doubt or uncertainty as to the meaning of the Legislature, if the words or provisions of the statute are obscure, or if the enactment is fairly susceptible of two or more constructions, that interpretation will be adopted which will avoid the effect of unconstitutionality, even though it may be necessary, for this purpose, to disregard the more usual or apparent import of the language employed." Black on Interpretation of Law, pp. 93, 94.
Keeping in mind the purpose of the Constitution not to weaken or destroy the power of the Legislature in its necessary control over the subordinate divisions of the State Government (Mills v. Comrs., 175 N.C. 217), but to preserve the cohesion and to prevent the dismemberment of the school system by local legislation, let us ascertain the purpose of the statutes in question and, by applying the accepted rules of construction, determine whether the nullity of the act is "clear, *Page 349 
complete, and unmistakable," or shown "beyond a reasonable doubt." In plain language it is provided that the act shall not interfere in any way with the organization of the schools, as provided in the general law (section 10); that the school committee of each district shall meet annually at least a month before the time for the preparation of the annual budget and report their recommendations to the county board of education (section 9); that the act shall not operate to reduce the funds which are now provided, or may hereafter be provided by the Legislature for operating the schools for a period of six months, and that the funds raised under the act shall be an additional amount to be used for the purpose of securing better buildings and equipment, of lengthening the term beyond six months, and of providing for an increase in the salaries of teachers (section 6).
Section 5 is as follows: "That if this act is approved by a majority of the qualified voters, then it shall become the duty of the county board of education to, as rapidly as possible, equalize school advantages in every section of the said county, and to this end the county board of education is authorized to provide, at public expense, as a charge against the fund derived from the provisions of this act, to transport those children who live beyond a reasonable walking distance of a public school. It shall also be the duty of the county board of education, as early as possible, to provide all those who have completed the grammar school with good high school facilities either by having a high school in walking distance or by transporting the pupils to a high school."
The various provisions of the statutes, coordinated and combined, seem to indicate as the primary purpose the creation of a single tax district. It will be conceded, we presume, that there is no express provision for establishing one school district or for changing the lines of any district. Nor do we think that such provision can be implied; but if it can, such implication, under the usual rules of construction, while it might be resorted to to sustain the statutes, cannot be invoked to destroy them.Lowery v. School Trustees, supra. As we understand the act, it leaves intact the boundary lines of the district and the management of the schools as provided in the general law, subject only to such modification as is reasonably necessary to effect the application of a supplementary tax for the designated purposes. Equalizing the school advantages signifies a just and equitable apportionment of the funds derived from the entire taxing district among the various school districts in order to remove such inequality as under the existing plan works to the benefit of one district to the detriment of another. We are not at liberty to assume, as a cause for destroying the act, that the provision for transporting children who live beyond a reasonable walking distance from a public school necessarily implies that the lines of the various *Page 350 
districts shall in effect be obliterated or ignored. We do not think the language used indicates such intention.
The proposition that the provision for a special taxing district and the application of the funds is a legislative act which is not inhibited by the organic law appears to rest on established principles. In Desty on Taxation, vol. 1, p. 276, it is said: "The Legislature, in the exercise of its general powers of taxation as distinct from its power of local assessment, may create a special taxing district, without regard to the municipal or political subdivisions of the State; and it is not essential that such districts should correspond with the political divisions. . . . It may create taxing districts without regard to any territorial division of the State, and confine the taxation to the district benefited. It may constitutionally establish new civil divisions of the State, embracing the whole or parts of different counties, cities, villages, or towns, for general purposes, provided the divisions recognized by the Constitution are not abolished, and their capacity to subserve the purposes of their organization is not impaired."
In Cooley on Taxation, vol. 1, p. 234, it is said: "When the nature of the case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power, and not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions. Reference to the cases cited in the margin will show that this is a principle which the courts assert with great unanimity and clearness. `The judicial tribunals,' it has justly been said, `cannot interfere with the legislative discretion, however onerous it may be.' And when it was objected that a certain construction of a statute would throw upon one locality the expense of constructing a road for State purposes, `the conclusive answer' was declared to be `that the State may impose such a burden where, in the wisdom of the Legislature, it is considered that it ought to rest.' The right to do this, where the Constitution has interposed no obstacles, is declared to be not now open to controversy, if indeed it ever was. The Legislature judges finally and conclusively upon all questions of policy, as it may, also, upon all questions of fact which are involved in the determination of a taxing district."
These principles have been approved by this Court in cases involving the construction of the section of the Constitution now under consideration. This section inhibits the enactment by the Legislature of any local, private, or special act authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys. After the constitutional amendment went into effect the General Assembly passed an act authorizing the board of commissioners of McDowell County to issue bonds for road purposes in North Cove Township, and *Page 351 
requiring the levy of a tax for paying the principal and interest. In sustaining the act, Brown, J., said: "An analysis of the act shows that its primary purpose is to authorize the sale of bonds for road purposes in North Cove Township, and to require the levying of a tax to pay the interest and principal of the bonds. It appoints road commissioners to control the expenditure of the money and to supervise the work, the present laws of the township remaining in force except where modified by the act. The question presented is of necessity one of novel impression in this State, but we must conclude that the act is not of a character which the General Assembly is prohibited from enacting. It contains no provision for laying out, opening, altering, maintaining, or discontinuing highways. It only provides the means for constructing and repairing them. . . . It is impossible to conceive that the purpose of the recent amendment was to deprive the General Assembly of the power absolutely necessary to aid counties and townships in the construction and repair of their public roads. The framers of the amendment no doubt intended to leave intact a long recognized and salutary power of the Legislature to supervise and control the financial affairs of the municipalities of the State. Similar prohibitions as the one under consideration are to be found in other states, and they have not been construed so as to deprive the General Assembly of said powers. Such provisions are construed not to destroy or weaken the power of the General Assembly in its necessary control over the subordinate divisions of the State Government, but to prevent numbering the statute books with a mass of purely private and local legislation."
The act construed in Brown v. Comrs., 173 N.C. 600, was obviously intended to create a taxing district for road purposes, and the power of the Legislature to enact it was upheld. This case was affirmed in Mills v.Comrs., 175 N.C. 215; Parvin v. Comrs., 177 N.C. 508; Comrs. v. Pruden,178 N.C. 394; Martin County v. Bank, 178 N.C. 26; Comrs. v. Bank,178 N.C. 170. See, also, Board of Trustees v. Webb, 155 N.C. 379. In the Guilford act the manifest purpose is to create a taxing district for school purposes. In such case the constitutional prohibition does not apply, but it has been applied when the Legislature undertook by special act to establish school districts and to prescribe their boundaries. Trustees v.Trust Co., 181 N.C. 306; Sechrist v. Comrs., ibid., 511; Robinson v.Comrs., 182 N.C. 590.
Since the general power of the Legislature to create a taxing district and to fix its boundaries is neither denied nor impaired by the constitutional amendment, Art. II, sec. 29; since the school districts are retained with their former boundaries, and since the powers of the school committee in each district are unchanged, and the organization of the schools *Page 352 
is not affected, we conclude that the act under which the election was held is not in conflict with Art. II, sec. 29, of the Constitution.
2. Is the act under which the election was held in conflict with Art. VII, sec. 7, of the Constitution? The plaintiff contends that the voters of the districts in which no tax has been levied are taxed without their consent and required to bear a portion of the burden imposed upon the common fund for the payment of obligations outstanding against the districts in which bonds have been issued, while the defendant contends that the creation of the tax district was a matter within the power of the Legislature, and that the validity of the act creating such district is not impaired by the failure to extend to all the voters within the territory an opportunity to approve or disapprove the tax. For the sake of clearness, it may be well, in the first place, to refer to former decisions of the Court with respect to the consolidation of school districts. C. S., 5530, provides that upon a written request of the committee or trustees of any special tax district, the county board of education may enlarge the boundaries of any tax district . . . so as to include any contiguous territory, and in case a majority of the qualified voters of such new territory shall vote in favor of a special tax of the same rate as that levied in the special tax district, the new territory shall be added to and become a part of the special tax district. InPaschal v. Johnson, 183 N.C. 132, it was suggested that the question of combining a special taxing district with nonspecial taxing territory should be considered and dealt with as an enlargement of districts under this section; and in Perry v. Comrs., 183 N.C. 387, and in Hicks v.Comrs., 183 N.C. 394, it has been held that the consolidation of a taxing district and a nontaxing district could not legally be effected without the approval of the qualified voters in the proposed new territory. As we have attempted to show these decisions do not determine the question presented in the instant case, because there is no attempted consolidation of the various school districts within the territory embraced in the Guilford act. In Riddle v. Cumberland, 180 N.C. 321, it appears that an election was held for the purpose of consolidating all the school districts in Gray's Creek Township, in which there were two special taxing and three nonspecial taxing districts. It was understood at the election that if a majority of the qualified voters favored the consolidation, the tax, and the sale of bonds, the existing tax in the two special taxing districts should automatically cease. In affirming a judgment declaring the election valid, Walker, J., discussing the question, said: "There is nothing in the contention that a separate election should have been held in the territory not embraced in the old district, as that territory was consolidated with them into one school district, and the election was ordered to be held in the new territory, to be known as Gray's Creek *Page 353 
Township. The entire township was to be established as a single school district, and the vote was to be taken accordingly. Those of the township who did not reside in the former school tax districts were as much entitled to vote freely and unreservedly upon the question as those who did. . . . There was not, even `in effect,' anything done which discriminates against those in the three districts untaxed under the former law, nor which allowed those in the two taxed districts to levy a tax upon those in the other districts, which they themselves did not have to pay." This decision is in accord with the recognized authorities.
Section 4 of the Guilford act is as follows: "That if a majority of the qualified electors favor the additional school tax, then it shall operate to repeal all local school taxes heretofore voted by local tax districts and special charter districts: Provided, that all indebtedness, bonded and otherwise, of the special tax districts and special charter districts in said territory shall be assumed by the county board of education and the indebtedness and the interest and sinking fund on bonds shall be paid out of the revenue derived from the additional school tax levied under this act." The clause preceding the proviso is substantially identical with the stipulation which had a material bearing in the Riddle case — that if the proposed tax should be voted the existing tax should automatically cease. The instant question, therefore, is this, What is the effect of the proviso in section 4?
Art. VII, sec. 7, of the Constitution is as follows: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."
In view of this constitutional provision, can the creation of the taxing district be sustained without affording the voters of the nontaxing districts an opportunity to vote on the question? If the Guilford act had provided for the consolidation of all the school districts, the decision in the Perry and Hicks cases, supra, would have been controlling; but in the creation of a taxing district the Legislature has plenary power to fix the boundaries without regard to the question of approval or disapproval by the qualified voters. When the boundaries are thus prescribed, a majority of the qualified voters residing in the taxing territory may determine the question of levying a tax and issuing bonds, even when the tax, as in this case, is not, in the constitutional sense, a necessary expense. The principle is analogous to that of an extension of the boundaries of a municipal corporation in which the annexed territory must share the burdens of the entire municipality (Dillon on Municipal Corporations, vol. 1, sec. 106), or to the extension of the boundaries of a county, by *Page 354 
means of which the inhabitants of the new territory may be taxed, not only to pay their proportionate part of the existing indebtedness of the county from which the new territory is taken, when such liability is retained by legislative action, but the indebtedness likewise of the county to which it is annexed, unless otherwise provided, whether then existing or thereafter contracted. That is, tax districts may be created without special regard to the will, wish, or convenience of the people who inhabit them. Dare v.Currituck, 95 N.C. 190; S.C. (Currituck v. Dare), 79 N.C. 566; Comrs.v. Bullard, 69 N.C. 18; 28 Cyc., 185-220 et seq.
The authorities in this jurisdiction support the defendants' contention that the nontaxing school districts cannot enjoin the levy of the proposed tax on the ground that the act under which the election was held is in conflict with Art. VII, sec. 7, of the Constitution.
3. The plaintiff's final contention is that the act under discussion was enacted in violation of Art. I, sec. 10, of the Constitution of the United States; or, specifically, that the legal effect of section 4 is to impair the obligation of contracts entered into by the governing bodies of the bonded districts and the holders of the unpaid bonds. "No state shall . . . pass any law impairing the obligation of contracts." But the question whether this provision has been infringed is not open to the plaintiff. He is not a creditor of either of the school districts; he holds none of the bonds. When the legal or equitable rights of a party are not involved, he cannot be heard to complain as an abstract proposition that the obligation of a contract between others is impaired. In Williams v. Eggleston, 170 U.S. 309, Mr. Justice Brewer said: "The parties to a contract are the ones to complain of its breach, and if they are satisfied with the disposition which has been made of it, and of all claims under it, a third party has no right to insist that it has been broken." And in Hooker v. Burr, 194 U.S. 422, Mr. Justice Peckham
observed: "We have lately held (therein following a long line of authorities) that a party insisting upon the invalidity of a statute, as violating any constitutional provision, must show that he may be injured by the unconstitutional law before the courts will listen to his complaint." Furthermore, provision is made for payment of the indebtedness, bonded and otherwise, of the taxing districts by the new taxing district (section 4), and it has been held that a statute which authorizes or requires a new taxing district to assume and pay the debts and obligations of the old district does not thereby impair the obligation of the existing contracts. 10 Fed. Sts., Anno., 2d Ed., 993, 994, and cases cited. The debts contracted are not extinguished, and the rights of the creditors are amply protected. Broadfoot v. Fayetteville,124 N.C. 478. *Page 355 
After a careful and deliberate consideration of the record and the argument of counsel, we hold that the judgment of the Superior Court should be
Affirmed.