This is a motion upon affidavits and other evidence to enjoin the board of commissioners from signing, issuing, and delivering to the board of education or selling any school bonds purporting to be authorized by an election held in Waynesville Township on 28 July, 1923, and from levying a special school tax thereunder, and to enjoin the board of education from making application to the commissioners to issue said bonds and from issuing or selling them, from borrowing money on them, and from acquiring any property by virtue of said election.
At the hearing Judge Bryson found from the evidence the following facts:
First: That at a regular meeting of the County Board of Education of Haywood County, held on 17 May, 1923, all members being present, the following resolution was unanimously adopted:
"It was unanimously declared that Waynesville Township be, and the same is hereby created, a special school-taxing district, as provided *Page 127 
by sec. 234 of art. 18 of the public school laws of North Carolina of 1923. The county board of education, after due inquiry, found that it is desirable to levy a special tax for schools, in addition to the county tax for the six months school term in said Waynesville Township Special School-Taxing District, and hereby defines and describes the boundary lines of Waynesville Township Special School-Taxing District to be as follows: To embrace all territory now contained in Waynesville Township; and that this order defining said school district be spread upon the minutes."
Second: That thereafter, either in May or June, 1923, a majority of the committees and trustees of the several public schools in Waynesville Township, together with 25 or more citizens and taxpayers of Waynesville Township, qualified voters, filed petitions with the Board of Education of Haywood County, requesting that an election be held in Waynesville Township on the question of creating said township a special school-taxing district, and also for the purpose of voting bonds in the sum of $177,000 on behalf of said special school-taxing district.
Third: That the Board of Education of Haywood County duly approved, and so endorsed, said petitions and presented the same to the Board of County Commissioners of Haywood County.
Fourth: That the Board of County Commissioners of Haywood County, in regular session on 7 June, 1923, all members being present, considered said petitions, ordered elections as requested, designated voting places, appointed registrars, ordered a new registration, and notice of the election to be given, prescribed ballots, etc., a copy of such orders being contained in Exhibits A and B attached to and made a part of the answer of the Board of Education of Haywood County, and incorporated into this finding of fact in their entirety.
Fifth: That pursuant to the orders of the board of county commissioners referred to in paragraph four of these findings of fact, notices of such elections were duly published, a new registration of the qualified voters of Waynesville Township made by the registrars designated and elections held at the time and places appointed.
Sixth: That as the result of such election an accurate tabulation of the votes cast showed:
In South Ward Precinct, for or against bonds — Total number of qualified voters ................... 1,119 Total number of ballots cast "for the issuance of $177,000 school bonds" ........................... 550 Total number of ballots cast "against the issuance of $177,000 school bonds" ........................... 228 Majority for bonds .................................. 322 Total number voting ................................. 778 *Page 128 
In South Ward Precinct, for local tax — Total number of qualified voters ..................... 1,119 Voting "for local tax" ............................... 550 Voting "against local tax" ........................... 229 Majority "for local tax" ............................. 321 Total number voting .................................. 779
North Ward Precinct — Total registration ................................... 1,126
For or against bonds — Total voting "for the issuance of $177,000 school bonds" ............................................ 632 Total voting "against the issuance of $177,000 school bonds" ............................................ 103 Majority "for bonds" ................................. 529 Total vote cast ...................................... 735
For or against local tax — Total registration ................................... 1,126 Total voting "for local tax" ......................... 626 Total voting "against local tax" ..................... 107 Majority "for local tax" ............................. 519 Total vote cast ...................................... 733
Seventh: That the results of said elections, so held in the North and South Ward precincts, were duly certified to the Board of County Commissioners of Haywood County by the judges and registrars of said precincts.
Eighth: That the Board of County Commissioners of Haywood County tabulated said returns, found a majority of the qualified voters of Waynesville Township voting "for the issuance of $177,000 school bonds" and "for local tax" and so declared the results of such elections as being in favor of the "issuance of bonds" and "for local tax."
Ninth: That at the date of the action of the county board of education declaring Waynesville Township a special school-taxing district (paragraph one of findings of facts) and at the date of said elections, there was situate within the territorial limits of Waynesville Township
(a) A special school-tax district coterminous with and comprising the corporate limits of the town of Waynesville; that in said district there was and still is a bonded indebtedness of $38,000.
(b) A special school-tax district comprising the corporate limits of the town of Hazelwood and certain territory contiguous thereto having a bonded indebtedness of $20,000, and State loan of $15,000.
(c) Saunook Local-Tax District. *Page 129 
Tenth: That a considerable, if not the larger part of Waynesville Township lies outside of the special districts of Waynesville and Hazelwood and the local-tax district of Saunook.
Eleventh: That no separate election was called or held at which the question of voting bonds in the sum of $177,000 or issuance of local tax, the subject of the election called (see paragraph four of findings of fact) was submitted to the voters of Waynesville Township residing and voting outside the territory embraced in said special and local-tax districts of Waynesville, Hazelwood and Saunook.
Twelfth: That the registrars in making said registration did not confine their work in its entirety to the designated registration places, but registered certain persons, number unknown, at other places, and in some instances placed names upon the registration books without personally interviewing the person or persons; but the court does not know, and from the evidence cannot find, who or the number of persons so recorded, or their preference as for or against the issuance of bonds or local tax, or whether such person or persons did or did not participate in said election, and this finding applies as well to those whose names were placed upon the registration books after personal interview away from the designated registration places.
Thirteenth: That no name was placed upon the registration books by the registrar until such officers had thoroughly satisfied themselves of the qualifications of such person as a legal voter, and the court cannot and does not find that any person's name was placed upon said registration books who was not eligible to registration.
Fourteenth: That a majority of those voting who resided without the boundaries of Waynesville and Hazelwood Special-Tax Districts and Saunook Local-Tax District cast their votes against the issuance of the proposed "bond issue," and against "local tax."
From these facts his Honor deduced the following conclusions of law and rendered the following judgment:
1. That the acts of the Board of Education of Haywood County in declaring Waynesville Township a special school-taxing district, and the several steps taken preliminary to the presentation of the petitions for election to the board of county commissioners, were legal, authorized by law, and in conformity to the provisions of an act of the General Assembly, session of 1923, entitled "An act to amend the Consolidated Statutes, and to codify the laws relating to public schools." being for the purpose ofcreating a special school-taxing district and not for the enlarging one already created. Coble v. Comrs., 184 N.C. 342.
2. That the elections were regularly and legally called and held, and a majority of the qualified voters of Waynesville Township having cast their ballots "for the issuance of $177,000 school bonds," and "for local *Page 130 
tax," that the action of the board of county commissioners in declaring the results of said election as in favor of the issuance of the bonds and local tax was in all things valid and legal.
3. That as to the action of the registrars, the court holds (a) that at most there were irregularities committed by the registrars and not by the voters; (b) that there being no evidence to indicate the number of names so recorded, or whether they or any of them, or if any, how many were not entitled to registration, or whether any so registered voted, or if any, how many, or if voting, how they expressed their preference, concludes that in the absence of such findings of fact that such suggestions are insufficient to vitiate the declared results of the said elections.
Upon the foregoing findings of fact and conclusions of law the court considers and adjudges that the continuance of the injunction as sought by plaintiffs should not be granted, and orders a dissolution of said injunction. The plaintiffs appealed.
For the purpose of providing better school advantages in Waynesville Township, the General Assembly, at the session of 1923, passed a public-local act which was to become effective when ratified by a majority of the qualified voters of the township (P.-L. L. 1923, ch. 350); but the appellants say that the act has not been approved and is not in force, and that the election which they attack was held under the provisions of the codified laws relating to public schools. Public Laws 1923, ch. 136. The appeal will be treated upon this assumption.
The action was brought to contest the validity of an election held in Waynesville Township on 28 July, 1923, to determine whether a special tax should be levied to supplement the school fund and whether bonds should be issued for the purpose of acquiring sites and improving and erecting school buildings. The plaintiffs obtained an order restraining the levy of the tax and the issuance of the bonds and appealed from his Honor's refusal to continue the temporary order to the final hearing.
The first and second exceptions are so clearly untenable as to require no discussion, and the third relates to the legal effect of the first finding of facts and may be considered in connection with exceptions taken to the several conclusions of law. Exceptions 4-9 concern the facts as found or the failure to find additional facts. On appeal from an order refusing or continuing an injunction to the hearing, the facts as found by the lower court, while not conclusive, are entitled to just and adequate consideration. In Hyatt v. DeHart, 140 N.C. 270, the Court *Page 131 
said: "Ordinarily the findings of fact by the judge below are conclusive on appeal. While this is not true as to injunction cases, in which we look into and review the evidence on appeal, still there is the presumption always that the judgment and proceedings below are correct and the burden is upon the appellant to assign and show error." Jones v. Boyd, 80 N.C. 258;Evans v. R. R., R. R., 96 N.C. 47; Burns v. McFarland, 146 N.C. 382;Davenport v. Comrs., 163 N.C. 147; Peters v. Highway Com., 184 N.C. 30;School Com. v. Board of Education, 186 N.C. 643. From inspection of the record we find that the facts set out in the judgment are supported by the evidence and we see no substantial reason for declining to concur in the facts as found; and in the absence of a request for additional facts an exception that other findings should have been made is generally not available to the appellants. Dell School v. Peirce, 163 N.C. 424. If, however, the additions on which the appellants insist were incorporated in the judgment by this Court the result would not be changed.
The appellants excepted to the second and third conclusions of law which involve the regularity and legality of the election. They insist that the law prescribing the way in which electors may register was not followed; that several persons whose names were registered were not allowed to vote; that names were registered when the required oath was not administered; that the age of the elector was frequently omitted from the registration, and that these and other irregularities vitiated the election. On the other hand there was evidence tending to show that no voter was registered to whom the oath had not been administered unless the registrar was satisfied that he was entitled to vote; that of those who were not sworn some did not vote while others voted against the bond issue and the tax, and that the oath was administered in all cases in which there was any reasonable doubt of the applicant's eligibility. On these questions the affidavits were apparently conflicting, but the judge below concluded that the irregularities were committed by the registrars, not by the voters; that there was no evidence to indicate that any one who voted was not entitled to registration or whether those alleged to have been improperly registered or denied registration voted or would have voted for or against the proposed measures, or whether the result of the election would probably have been reversed had the law been consistently observed. In other words, his Honor held that the appellants had failed to show that the result of the election would have been otherwise if the alleged irregularities had not occurred. We approve this conclusion.
In Davis v. Board of Education, 186 N.C. 233, holding that a mere irregularity in registration will not vitiate an election, the Court said: "The mere irregularity of an election officer who has neither rejected a *Page 132 
qualified voter nor admitted one who was disqualified, is ordinarily overlooked as the failure to comply with a directory provision; but it is otherwise if the irregularity is caused by the agency of a party who seeks to obtain a benefit for himself. DeBerry v. Nicholson, supra. Instances of the disregard by an election officer of directory provisions which ordinarily will not deprive the elector of his right to vote are an improper method of administering an oath or failure to administer it, providing ballots slightly beyond the required size, certifying the count made not by but in the presence of the officers of election, and other irregularities not affecting the result of a fair expression of the popular will. Newsome v. Earnheart, supra; DeBerry v. Nicholson, supra; Roberts v.Calvert, 98 N.C. 581; Hampton v. Waldrop, 104 N.C. 453; Quinn v.Lattimore, 120 N.C. 426; Hendersonville v. Jordan, 150 N.C. 35; Gibsonv. Comrs., 163 N.C. 511; Hill v. Skinner, 169 N.C. 409."
No complaint having been filed, the motion to continue the restraining order was heard on affidavits and record evidence. To entitle them to an injunction it was incumbent upon the appellants not only to set out specific allegations as a basis of relief, but to produce evidence which if accepted would show at least an apparent right to the relief demanded. Even where injunctive relief is not merely ancillary to the relief sought but is itself the principal relief a prima facie case must be shown. Craycroff v.Morehead, 67 N.C. 422; Riggsbee v. Durham, 98 N.C. 81; Jones v. Comrs.,107 N.C. 248, 265; Porter v. Armstrong, 132 N.C. 66; Jones v. Lassiter,169 N.C. 750; Woodall v. Highway Com., 176 N.C. 388; Peters v. HighwayCom., supra, 32.
Herein the appellants have failed. They have produced no evidence as to the sentiment of the electors on the questions proposed except in remote and general terms and no evidence from which we can reasonably infer that the irregularities complained of turned the election. True, there is evidence that a majority of the voters residing outside the original taxing districts voted against the proposed bonds and tax, but there is no suggestion that their ballots were not included in those returned by the judges of election in opposition to both measures. The exceptions relating to the irregularities in the election and those taken to the second and third conclusions of law must therefore be overruled.
The exception to the first conclusion of law is based on the contention that the resolution adopted by the board of education on 17 May, 1923, did not create a special-taxing district, but in legal effect merely combined two taxing districts with territory in which no tax had been voted, and that such consolidation was unlawful. The Court has decided, it is true, that where a school-taxing district has been established its boundaries may not be enlarged or extended so as to include *Page 133 
an adjacent nontaxing district without the approval of a majority of the qualified voters of the nontaxing territory. C. S., 5530; Perry v. Comrs.,183 N.C. 387; Hicks v. Comrs., ibid., 394; Vann v. Comrs., 185 N.C. 168. But we do not concur in the argument that the resolution undertakes to enlarge the taxing districts or to consolidate taxing and nontaxing districts without a vote of the outlying territory contrary to the decisions just cited. In the public school law as amended since these decisions were rendered a special school-taxing district is defined as a territorial division of a county embracing more than one school district in which special taxes for schools may be voted, and a township is declared to be a territorial division or a special school-taxing district. P. L. 1923, ch. 136, secs. 3 and 234. The county board of education is authorized to define or describe the boundary lines of special districts and to approve petitions for election when endorsed by the school boards of a majority of districts within the special taxing district. Secs. 219 et seq. "If a majority of the qualified electors in the special school-taxing district shall vote in favor of the special school tax, then it shall operate to repeal all school taxes theretofore voted in any local tax or special charter district located within said special school-taxing district, except such taxes as may have been voted in said local tax or special charter district to pay the interest on bonds and to retire bonds outstanding. But the county board of education shall have the authority to assume all indebtedness, bonded and otherwise, of said local tax or special charter district and pay all or a part of the interest and installments out of the revenue derived from the rate voted in the special school-taxing district:Provided, the revenue is sufficient to equalize educational advantages and pay all or a part of the interest and installments on said bonds."
The provision concerning the repeal of all school taxes previously voted is similar to that of section 4 in the act which was considered in Coble v.Comrs., 184 N.C. 342. There it is said: "When the boundaries are thus prescribed, a majority of the qualified voters residing in the taxing territory may determine the question of levying a tax and issuing bonds, even when the tax, as in this case, is not, in the constitutional sense, a necessary expense. The principle is analogous to that of an extension of the boundaries of a municipal corporation in which the annexed territory must share the burdens of the entire municipality (Dillon on Municipal Corporations, vol. I, sec. 106), or to the extension of the boundaries of a county, by means of which the inhabitants of the new territory may be taxed, not only to pay their proportionate part of the existing indebtedness of the county from which the new territory is taken, when such liability is retained by legislative action, but the indebtedness likewise of the county to which it is annexed, *Page 134 
unless otherwise provided, whether then existing or thereafter contracted. That is, tax districts may be created without special regard to the will, wish, or convenience of the people who inhabit them. Dare v. Currituck,95 N.C. 190; S.C. (Currituck v. Dare), 79 N.C. 566; Comrs. v. Bullard,69 N.C. 18; Cyc., 185-220, et seq." Indeed, we think substantially all the questions embraced in the tenth exception were considered in that case and further discussion would result in needless repetition. Retention of the taxes voted in the taxing districts to pay the interest on the bonds outstanding or to retire them meets the requirement of Article I, sec. 10 of the Constitution of the United States. Port of Mobile v. Watson,116 U.S. 289, 29 Law. Ed. 620; 10 Fed. Sts. (2d Anno. Ed.), 993, 994;Coble v. Comrs., supra.
While the alleged irregularities do not vitiate the election they fairly illustrate the spirit of indifference which characterizes the methods often adopted in the registration of voters. These lax methods, sometimes annoying, are always to be regretted and discouraged. We again refer to them for the purpose of emphasizing the importance of respecting the various statutes defining the qualification of voters, the prerequisites of registration, and the duty of registrars.
No error appearing, the judgment of the lower court is
Affirmed.