F. T. HICKS, W. E. MUSGROVE ET AL. v. BOARD OF EDUCATION AND BOARD OF COUNTY COMMISSIONERS OF WAYNE COUNTY, AND OTHER TAXPAYERS.

(Filed 26 April, 1922.)

**1. School Districts—Creation of Districts—Combination of Districts.**

C. S., 5526, providing for the creation of a special school tax district by the county board of education without regard to township lines, upon an election to be held within the proposed district, after notice, etc., refers to territory having no special school tax and has no application to the enlargement of such district under the provisions of C. S., 5530, wherein one or more school tax districts have already been established and there is other contiguous territory sought to be included which has not voted any special school tax.

**2. Same—Outlying Territory—Vote of the Electors—Elections.**

Where one or more special school tax districts have been established under the provisions of our statutes applicable, such districts may not extend their territory to include other districts and adjacent territory that have not voted a special tax, without the question having first been submitted to and approved separately by the voters of the outlying territory, and giving them the right to independently determine for themselves whether they shall be specially taxed, in the amount proposed. C. S., 5530. The distinction between *Riddle v. Cumberland,* 180 N. C., 321, and *Perry v. Comrs., ante,* 387, and this case, shown and commented upon by *Walker, J.*

**3. Same—Enlargement of Existing District.**

In proceedings to establish a special school tax district under the provisions of C. S., 5526, it appeared that therein was included several local tax districts already established, and also territory wherein no special

tax had been voted, and the proceedings were properly instituted by only one of these local school tax districts: *Held*, the proceedings were for the enlargement of the petitioning local tax district, and required that the others therein should also have proceeded regularly under the statute and that the electors in the proposed part that had not voted a special tax be permitted to vote separately upon the question of the contemplated increase for the designated purpose. C. S., 5560.

**4. Statutes, in Pari Materia—School Districts—Special Tax—Elections.**

C. S., 5526, providing for the creation of new local school tax districts, and section 5530 requiring the question of an enlargement of an existing special school tax district to be submitted separately to the voters of the proposed new territory are to be construed *in pari materia*, and the provisions of each are held reconcilable with those of the other.

**5. Same—Taxation—Elections.**

Laws of 1921, ch. 179, providing for the consolidation and adjustment of rates of taxation and authorizing the voters of a district so consolidated to vote special tax rates for the schools in the entire district, etc., should be ·construed to harmonize with C. S., 5530, and the provisions of the former statute do not affect or impair the requirement of the latter one, that for an extension of the boundaries of an existing local school tax district or districts, the approval of the tax proposed must first be given by the voters in the proposed new and contiguous territory.

**6. Same—Abolition of Districts.**

Under the provisions of C. S., 5530, a local tax school district may be abolished by the act of creating a new one of which it is a component part, while section 5531 is restricted simply and singly to the abolition of an existing district, and so construed: *Held*, these sections are in harmony with each other.

APPEAL by plaintiff from *Cranmer, J.,* at October Term, 1921, of WAYNE.

Controversy submitted without action under C. S., 626, upon the following facts agreed:

1. Pursuant to section 4115 of the Revisal, a petition signed by more than one-fourth of the freeholders within a proposed special school district in Wayne County, in whose name real estate in such district is listed on the tax lists for the current fiscal year, was duly presented to and endorsed by the county board of education of Wayne County, and the board of county commissioners, after thirty days notice at the courthouse door and three other public places in the proposed district, held an election in accordance with section 4115 of the school law, to ascertain the will of the people within the proposed special school district, whether there shall be levied in said district a special annual tax of not more than thirty cents on the hundred dollars valuation of property, to supplement the public school fund which may be apportioned to the said district by the county board of education, in case such tax is voted.

The above mentioned petition reads as follows, and contains signatures of taxpayers from all parts of the district:

### PETITION FOR A SPECIAL TAX ELECTION

*To the Board of Commissioners of Wayne County:*

We the undersigned freeholders in the county of Wayne, constituting one-fourth of the freeholders in the proposed special school district included within the following boundaries, to wit: All of Pikeville Township, that part of Stoney Creek Township included in the Mt. Carmel District, and that part of Buck Swamp Township included in the Pleasant Grove District.

In order to establish at Pikeville a standard high school and to maintain in other sections of the said territory, efficient elementary schools, respectfully petition your honorable board for an election to ascertain the will of the people within the proposed special school district, whether there shall be levied in said district a special annual tax of not more than 30 cents on the $100 valuation of property, to supplement the public school fund which may be apportioned to said district by the county board of education in case such special tax is voted.

2. Several years ago the town of Pikeville, including the surrounding territory, voted for a special tax district which was established and still exists. In December, 1919, Mt. Carmel voted for a special tax school district, which was established and still exists. The said proposed special school district includes the present Pikeville School District, the Mt. Carmel School District, and also includes the contiguous territory of Pleasant Grove School in Buck Swamp Township, Taylor's School, and the whole of Pikeville Township. The new territory included within the proposed special school district has never heretofore voted for a special school tax district, and there is at present no such school district therein.

3. That all procedure required by C. S., 5526 (which is a part of Rev., 4115), leading up to the election was duly complied with, and the election thereunder was duly and regularly held on Saturday, 8 October, 1921, at which time there was a majority of the votes cast in favor of the proposed special school district. At said election all the qualified voters within the present Pikeville School District, the Mt. Carmel School District, and the new territory were allowed to vote.

4. That a majority of the committee or trustees of the Pikeville Special School District or of the Mt. Carmel School District did not request in writing that the county board of education may enlarge the boundaries of those special school districts which had been established.

5. A few days prior to the election a number of the taxpayers in the new territory in the proposed special school district conferred with counsel with reference to obtaining a restraining order against the holding of said election, and in a conference between the plaintiffs and counsel for defendants it was agreed that the restraining order should not be applied for, and that at the October term of the Superior Court of Wayne County a controversy without action should be submitted to the court to determine the question as to whether or not the said election is legal or illegal, and it is further agreed that if the court shall hold the election illegal, then said election shall have nothing to do with any further steps that may be taken towards the creation of another district, but shall be canceled the same as if it had not been held. It is further agreed that nothing herein shall affect the right of either party to appeal and have the matters in controversy fully litigated and determined by the Supreme Court.

6. The plaintiffs contend that the purpose of the petitioners for the establishment of the proposed special school district is simply to enlarge the boundaries of the present Pikeville Special Tax District, and that said election should have been held as provided for by section 5530 of the Consolidated Statutes of 1919 (which is part of section 4115 of the Revisal of 1908, and referred to by the board of county commissioners as section 4115 of the school law), and that at said election the residents now within the Pikeville Special Tax District should not have been permitted to vote, and that only the qualified voters in the said new territory should have been allowed to vote at the election, and that since all the qualified voters in the proposed special school district were permitted to vote at the election which was held, that, therefore, said election was illegal.

7. The defendants contend that this special school district (which district happens to include other smaller districts), can be created pursuant to section 5526 of the Consolidated Statutes (which is part of section 4115 of the Revisal of 1908), and that the election held under said statute was legal.

It is agreed that the foregoing shall constitute the agreed statement of facts in a controversy without action.

This 22 October, 1921.

Signed by counsel for the respective parties, and duly verified.

NORTH CAROLINA—WAYNE COUNTY.

Whereas certain citizens of the proposed special school district, which is to include Pikeville Township, Mt. Carmel, and certain other contiguous territories, are contemplating procuring an injunction against the holding of the election which is called for Saturday of this week;

and whereas all the parties interested in the holding of said election, both pro and con, are desirous of having the matter determined strictly upon its legal merits:

Now, therefore, it is agreed by counsel representing both sides of the controversy, with the approval of citizens representing both sides, as follows:

1. The election shall be held as called on Saturday of this week, and no restraining order shall be served against the holding of said election.

2. At the October term of the Superior Court, which convenes 10 October, it shall be submitted to the court as a controversy without action, the question whether or not the said election is legal or illegal, and if finally held illegal by the court, it is agreed by the advocates of the special school district that the tax shall not be levied, and that the election shall be canceled, and if any further steps are taken towards the creation of a district, the election held on Saturday of this week shall have nothing to do with the creation of the district.

3. It is further agreed that nothing herein shall affect the right of either party to appeal and have the matters in controversy fully litigated and determined by the Supreme Court.

This 4 October, 1921.                    (Signed by counsel.)

Upon the said case agreed, the court held, and so adjudged, that the two boards had ample authority to proceed under the law as they did in the creation of the new special tax school district, as prayed for in the petition, and that the election held for that purpose was in all respects legal and binding, and that said election being valid, the returns of the same shall be certified and acted upon as required by the statute.   Costs against the plaintiffs.                    (Signed by the presiding judge.)

The plaintiffs duly excepted and appealed.

*Wentworth W. Pierce and J. H. Pou for plaintiffs.*
*Langston, Allen & Taylor and Teague & Dees for defendants.*

WALKER, J.   This is a controversy submitted without action to test the validity of an election proposing to create a standard high school at Pikeville, N. C., and to maintain efficient elementary schools at other sections in the same district, and to levy a special tax not more than 30 cents on the $100, to supplement the public school fund.

Plaintiffs contend that the election was not held in accordance with law, but clearly in contravention of two complete statutes relating to special school tax districts, and that the effect of this election, if it were valid, will be to abolish three existing special school districts within the territory of the proposed district, and this abolition will be worked not

directly but incidentally, or will not be accomplished in the manner prescribed by the statute for the abolition of special school tax districts. That C. S., 5531, provides the only method available for the abolition of a special tax district theretofore created and existing by virtue of an election held therein. Briefly, it provides that an election may be held upon petition of two-thirds of the qualified voters, and if at the election a majority of the qualified voters in said district shall vote against special tax, the tax shall be deemed revoked and shall not be levied, and the district shall thereby be discontinued.

Section 5532 provides for the continuance of any debt created, notwithstanding the district be abolished.

Section 5533 provides that an election for abolition shall be held not oftener than once in two years.

Section 5535 provides that an election may be held for the purpose of increasing the tax in a special tax district; but at its conclusion says: "No election shall be held oftener than once in two years."

The case on appeal sets forth that both the Mt. Carmel and Pleasant Grove special tax districts, included in the proposed consolidated or enlarged district, held elections less than two years prior to the election held last October for the purpose of establishing the consolidated district, and at such elections special taxes were levied, and plaintiffs contend that the effect of the new election, if held valid, will be to authorize an increase in taxes within less than two years after a former increase in tax had been voted. But we need not notice this contention any further in the view we take of the controversy. It is further contended by the plaintiffs that the Mt. Carmel and Pleasant Grove special tax districts cannot be either indirectly or inferentially abolished in any other manner than is prescribed by section 5531; and, as the election held undertakes in effect to abolish them, it was, therefore, in contravention of law, and is void.

The other ground of illegality urged against said election is that the order of the commissioners of the board of education of Wayne County undertaking to create a consolidated, or enlarged, district with Pikeville as its center, with the Pikeville School as the only high school in the district, and with elementary schools at other portions of the district, is an attempt to avoid a clear mandate of the law. It not only attempts to abolish the two school districts, Mt. Carmel and Pleasant Grove, in a manner not provided for by law; but it undertakes to add them to the Pikeville District, making them subsidiary to the Pikeville High School, which is beyond the travel reach of most of the pupils; and it does this without allowing those outside of the original Pikeville District an opportunity to vote separately upon the proposition whether they shall be added to the Pikeville District or not, as expressly recognized and declared by C. S., 5530.

Section 5530, upon which plaintiffs mainly rely, provides that upon the written request of a majority of the committee, or trustees, of any special tax district, the board of commissioners may enlarge the boundaries of such special tax district, subject to the approval of the voters to be expressed at an election which shall be held in the new territory. It prescribes that the voters in the new territory proposed to be included in the district shall have the privilege of voting whether they will levy upon themselves a special tax of the same rate (meaning the same rate that the special tax district levies). If a majority shall approve the tax rate, the proposed new territory is thereupon merged into the original district, and all in and out of the original district pay the same tax. This it is claimed is a fair and consistent act authorizing a reasonable exercise of the right of franchise or suffrage. The old district, it is argued, acts through its committee, and if it desires an enlargement, by resolution, it invites a certain designated territory to come into or join the district on the same terms enjoyed by those already in. The outsiders, at an election called for that purpose, pass upon the invitation, and either accept or decline it. If they accept, they have by a majority assumed a tax and acquired a corresponding benefit, or are supposed to have done so. It thus requires the affirmative act of the old district through its trustees, and the affirmative act of a majority of the taxpayers in the new district. If both approve, no one can complain. But in the case at bar, as plaintiffs assert, the old district did it all. It issued the invitation to come in, not depending upon the right of the taxpayers or voters in the new territory to accept or decline it, as they might see fit in their own interest to do, but that the old district or districts compelled the new and contiguous territory to be annexed to theirs, as they could and did easily do, because they had the majority and could outvote the minority in the new territory. This would seem to be contrary to the letter and the spirit of section 5530.

There is another ground upon which it is contended that this election is clearly illegal. There was, in the territory proposed to be embraced in the consolidated or new district, a considerable number of people who had never voted upon themselves any special tax whatsoever. They did not live in Pikeville District, nor in Mt. Carmel, nor in Pleasant Grove District. They lived in the country, where only the ordinary regular State school tax levy prevailed. These people have never voted any special tax upon themselves; and if this election is held valid, they will find themselves inside of a consolidated school district, with the 30 cents special tax imposed upon them, when they have never been allowed to separately vote on the question whether that tax should be levied or not, whereas they clearly were entitled to vote under section 5530, which vote, according to the plain directions of that section, must be among

themselves as a unit. As it was, they only had the privilege of voting in common with the electors in three other special tax districts; and the question whether they should pay a special tax was not decided by them alone, as required by the statute, but by a majority of the voters living in three existing special tax districts, as well as a number on the outside. The votes were not taken separately, but taken as a whole, and the aggregate result declared. The people in the new territory practically had no voice in the matter.

It is strongly urged by the plaintiffs that the election has not been held according to the provisions of any law of this State, but on the contrary, that it has been held in a manner which is clearly in opposition to both the letter and the spirit of the statute, the effect of it being to tax the people of an entire township, and of parts of two other townships, to maintain a high school at Pikeville, with elementary schools elsewhere; but all the people to be taxed alike for the cost of the high school, whether they live near enough to enjoy it or not, and this without letting the people in the outlying or new territory, who are doomed to use only elementary schools, have the privilege of voting separately upon that proposition. If the principle contended for by defendants be upheld by the court, it is argued with much force that there will be no limit to which the enlargement of school districts may not go, provided always the school committee inviting the enlargement is sure that the votes of the insiders will outnumber the votes of the outsiders.

Another ground of illegality is alleged by the plaintiffs to be that Mt. Carmel and Pleasant Grove are school districts, each with a board of trustees; and the board of trustees of neither of these districts petitioned for an enlargement. They did not issue any invitation to those who lived in Pikeville District, nor to those who lived in any school district, nor to each other. So that it cannot be considered that the enlargement was of either of those special tax districts; and the only other special tax district upon which an enlargement could be effected is the Pikeville District; and we have it that Pikeville has asked that its school district be enlarged by the addition of outlying territory, but that the election did not permit the outsiders to vote separately upon that proposition. But however this may be, we need not inquire, as the other ground is, in our opinion, fully sufficient to invalidate the election and prevent the formation of a new district in the manner proposed.

The defendants' contention, as stated in the brief of their counsel, is that the formation of the new school district is authorized by C. S., 5526, which provides for the creation of special school tax districts by the county board of education in any county without regard to township lines under the conditions as set forth in that section, which further provides for an election to be held within the proposed district, after the

26—183

required notice, to ascertain the will of the people within the proposed special school district, whether there shall be levied in such district a special annual tax of not more than 30 cents on the $100 valuation of property and 90 cents on the poll to supplement the public school fund which may be apportioned to such district by the county board of education in case such special tax is voted.

The defendants further contend that this special school district (which happens to include other small districts) can be created pursuant to section 5526 of the Consolidated Statutes (which is part of section 4115 of the Revisal of 1905), and that said election held under said statutes was legal, and that, this being so, the only question before the court is whether the board of education has the authority, under C. S., 5526, to create a special school tax district, which includes within its boundaries two smaller special tax districts, which had previously been created, together with new or additional territory; and if so, whether they should have proceeded under C. S., 5530, or under section 5526.

Under section 5530, they argue that the proceeding is commenced upon a written request of a majority of the committee or trustees of any special tax district, and it applies only to the enlargement of a district, and has nothing to do with the creation of a district, and, therefore, the procedure prescribed therein cannot be applicable to the case before the Court for the reason that there is no question of enlarging any one particular district.

We regard this contention as ignoring the distinction between creating a new district and enlarging one or more already established. A new district may be created by consolidating and enlarging one or more existing districts, which might be done by adding new territory to existing districts and giving them a new name, or an old district may be continued with added or increased territory. The two methods would be, in effect and for all practical purposes, an enlargement of the district, although called by a different name. Section 5526 would seem to refer to special school tax districts originally created or formed when the proceeding starts by petition of the designated number of freeholders. In that case every taxpaying freeholder has a fair chance to cast a vote, and declare thereby whether he elects to be taxed for the creation and maintenance of the new district, while under section 5530 the freeholders in the added territory would, in effect, have no such opportunity, as the combined negative vote of all of them in the new or added territory could be easily overcome by the decidedly preponderating affirmative vote in the old part of the district.

Our conclusion is, from a consideration of the entire law relating to the subject, that C. S., 5530, controls in a case like this one, so that where it is proposed to enlarge a district or districts by an addition of

new and contiguous territory, an election must be held in the new terri-
tory to determine whether there shall be a special tax of the same rate
as that voted and levied in the special tax district to which the territory
is contiguous, and if a majority of the voters in the new territory shall
vote in favor of the special tax, then the new territory shall be added and
become a part of the special tax district, otherwise the district shall not
be enlarged as proposed.  There is a further provision in regard to any
existing bonded indebtedness of the old district, which does not mate-
rially affect the question before us.

The provision for a separate election in the added or contiguous terri-
tory is not only a fair and just one, but is required to protect those living
in the new territory from the levy of a tax imposed upon them virtually
without their consent, or when, because of the difference in population
and voting strength, they had no fair opportunity to be heard upon the
question, whether they should become a part of the proposed district or
not, and thereby be taxed for its support and maintenance.  The case
clearly comes within the spirit of section 5530, if it does not fall within
its letter.  The sections of the law we are considering, being *in pari
materia,* should be construed together and with reference to the objects
to be attained and the methods to be pursued in accomplishing them.
But this Court has given strong intimation to an opinion favoring the
right of voters to be heard in the new or added territory when it is said,
in *Paschal v. Johnson, ante,* 129, as follows: "As to instances where
the tax rates may differ, as where there is an attempt to combine a
special tax district with nonspecial tax rate territory—the statutes pre-
sent greater difficulty for these special school tax districts, organized
and exercising governmental functions in the administration of the
school laws, have been held to be *quasi*-public corporations subject to
the constitutional provisions in restraint of contracting debts for other
than necessary expenses except by vote of the people of a given district.
*Smith v. School Trustees,* 141 N. C., 143; Constitution, Art. VII, sec. 7.
Where such conditions are presented and owing to the constitutional
objection suggested, it would seem that in order to combine a special
tax district with nonspecial tax territory the question should be con-
sidered and dealt with as an enlargement of districts and coming under
section 5530 of Consolidated Statutes, whereby the outside territory is
allowed to vote separately on the proposed tax.  The question, however,
does not arise on the present record, and is only referred to in order to
exclude the inference that in making our present decision we are approv-
ing *in toto* the provisions of Laws 1921, ch. 179, above referred to."

It seems to us that as the new territory is proposed to be added to
two or more existing school tax districts, instead of one only, does not
suffice to take the case out of the operation of C. S., 5530.  They are

all to form one district, and the fact that there are two or more instead of one moving in the matter furnishes greater reason why the people in the new territory should have a separate vote, so that they will not be out-voted, or their vote be overcome, by the two or more districts, perhaps each of them with a much larger voting population than that in the new territory. But, however that may be, our opinion is that the intention was that section 5530 should apply to the case as presented by this record.

Our attention was invited to Laws of 1921, ch. 179, which is supposed to be in conflict with our conclusion, but we do not think so, as the act of 1921 was evidently intended to be construed so as to harmonize with C. S., 5530; and there is really nothing in section 1 of the act of 1921 relating to the consolidation of school districts, or in its other sections, which prevents C. S., 5530, from having its full and intended operation, as the provision of section 5530 can well stand in its integrity, and have full and complete effect, without interfering at all with the similar operation of Laws of 1921, sec. 1. The consolidation therein provided for and the adjustment of rates of taxation may go on, and no taxpayer in a consolidated district required to pay a higher rate than that voted originally in his district, and the consolidated school districts authorized in the act of 1921 can vote special tax rates for schools in the entire district in accordance with law, and yet leave the people of "nonlocal tax territory contiguous to an existing school tax district" free to vote separately upon the question whether that territory shall be annexed to a special tax district or districts.

We are unable to discover why section 5530 and the act of 1921 may not well stand together without the latter abrogating or repealing any part of the former. Our duty is to reconcile them if it can be fairly and reasonably done. "Statutes upon the same subject-matter should be construed together so as to harmonize different portions apparently in conflict, and to give each and every part some significance, if this can be done by fair and reasonable interpretation." Cecil v. High Point, 165 N. C., 431; Mfg. Co. v. Andrews, 165 N. C., 285. "Separate sections of the Code should be so construed, if possible, as to reconcile them and effectuate each." Propst v. R. R., 139 N. C., 397.

There is no necessary inconsistency between sections 5530 and 5531 of the Consolidated Statutes. The former may abolish a district by creating a new one of which it is a component part, while section 5531 may be restricted solely to the abolition of an existing district. Thus considered and construed, there is no reason why they should not coexist and be brought into harmony.

The case of Riddle v. Cumberland County, 180 N. C., 321, was cited to us as bearing some resemblance to this case, and Perry v. Comrs.,

*ante,* 387, but it is shown in the last cited case by *Justice Stacy* that in several particulars set forth in that case there is a substantial difference between them sufficient to take them out of the rule of the decision in the *Riddle case, supra.* The latter case was brought under C. S., 5526, and the vote was taken accordingly. There was no fatal irregularity there in calling the election, while it appears in the facts agreed, upon which this case was tried, "that a majority of the committee or trustees of the Pikeville Special School District or the Mt. Carmel School District did not request in writing that the county board of education may enlarge the boundaries of those special school districts which had been established." Plaintiff contends that such a petition was necessary to authorize any election at all, under C. S., 5530, and it is so stated therein. It was intended, perhaps, to restrict section 5530 strictly to the case where a single district is enlarged by the addition of new and contiguous territory, and to refer section 5526 to a case where an entirely new district is to be formed, in which event all of those residing in the new district would have an equal and fair opportunity to vote, but we have concluded that a broader application should be given in this and the *Perry case, supra,* to section 5530, so as to make it embrace a case such as is presented in those records, noting the differences between them and the *Riddle case, supra,* as stated in *Perry's case, supra.*

As there was no sufficient compliance with C. S., 5530, in this instance, the election was invalid, instead of legal and valid, as held by the judge below, and the special tax district in question was not created according to law.

There was error in the judgment upon the case agreed which is reversed. Judgment will be entered instead for the plaintiffs.

Reversed.