C. W. CAUSEY, W. C. BOREN AND J. CLARENCE WATKINS v. GUIL-FORD COUNTY, J. A. RANKIN ET AL., INDIVIDUALS COMPOSING THE BOARD OF COMMISSIONERS OF GUILFORD COUNTY; THE BOARD OF EDU-CATION OF GUILFORD COUNTY AND FRED PEACOCK ET AL., INDI-VIDUALS COMPOSING THE BOARD OF EDUCATION OF GUILFORD COUNTY.

(Filed 20 October, 1926.)

1. **Schools—School Districts—Appeal and Error—Findings of Fact—Review.**

   Upon appeal from a restraining order the Supreme Court is not concluded by the facts found by the Superior Court judge in passing upon the question as to whether the county-wide plan of schools has been legally adopted as the statute requires, and its effect upon its repeal of a special school district theretofore existing under special statute relating to the schools of the county, and the Supreme Court may review the evidence and make its own conclusions of law therefrom. 3 C. S., 5481 (1).

2. **Schools—County Board of Education—Change in Plans — Notice—Statutes.**

   Our statute requiring the county board of education before changing the system of the schools from an existing one to notify by publication, etc., interested patrons, and in a prescribed way the committeemen of the district included in the contemplated change, is only for their meeting to be held in an advisory capacity not binding on the board, and when the statute has been complied with before the adoption of such plans, the action of the board is final without further notice, when the provisions of the statutes on the subject have been complied with. 3 C. S., 5481 (2). Public Laws 1924, Ex. Ses., ch. 121.

3. **Statutes—Repeal—Schools—School Districts.**

   *Held,* the school code under which a county board of education may change from an existing system of public schools to that therein provided (Public Laws of 1923, ch. 136, art. 6; 3 C. S., 5481), expressly repeals all former laws in such instances, including a provision in a special act providing that the school district therein created shall continue to be an independent school district and shall have exclusive control of its public free schools.

4. **Schools—School Districts—Statutes—Surrender of Charter—New Districts.**

   Where in contemplation of making a change from a special charter district to one authorized under our general statute, the board of trustees of the existing district passes a resolution requesting the county board of education of the proposed district to assume full jurisdiction and directing the execution of a quitclaim deed conveying title to its school property, may operate as a surrender of its charter, and objection that the special district continues to exist and function is untenable. C. S., 5430.

5. **Statutes—Interpretation—Schools—School Districts.**

   Statutes relating to a change of school districts within a county are to be liberally construed to effectuate the legislative intent.

6. **Schools—School Districts—Indebtedness of Special District Included in New One—Statutes—Local Tax Districts.**

   Where a special school district with an existing indebtedness has been included in the creation of a larger district, the formation of the new district without provision therefor in effect retains the indebtedness only on the special district incorporated therein, and is valid under our general statutes on the subject, the old district for the purpose becoming a local tax district. School Code, secs. 157, 238; 3 C. S., 5555.

APPEAL by the defendants from an order of *Webb, J.,* enjoining them from issuing and selling certain bonds, from collecting certain taxes, and from exercising any dominion or control over certain schools, and directing the county board of education to reconvey certain property to the city of Greensboro, as will appear by reference to the judgment. From GUILFORD. Reversed.

The object of the action is to annul and declare void the purported creation of a new school district known as the "Greater Greensboro School District," and to enjoin the levy of taxes and the issuance of bonds for the benefit of the district. The motion to continue the temporary restraining order came on for hearing at the courthouse in Greensboro on 16 August, 1926, upon the pleadings, affidavits and record evidence, and the presiding judge found the following facts:

1. The territory comprising the corporate limits of the city of Greensboro previous to the act of the General Assembly of 1923, extending

such corporate limits constitutes a special charter school district of the public school system of Guilford County, North Carolina, as defined by the laws of the State of North Carolina.

2. On 8 April, 1926, the board of trustees of such special charter district passed a resolution requesting the board of education of Guilford County to assume jurisdiction of such special charter district and directing the chairman and secretary of such board to execute a quitclaim deed conveying the property belonging to such school district to said county board of education.

3. At the time of the passage of such resolution, said board of trustees did not hold the legal title to such property, the same being vested in the city of Greensboro. The county board of education, upon receiving such request, by resolution duly passed, deferred action thereon and ordered such request filed with the secretary of such county board of education, and directed such secretary of such county board of education to procure the deed referred to.

4. No request was made upon the duly constituted authorities of the city of Greensboro to execute a deed conveying to the county board of education such school property until some time after 25 May, 1926.

5. On 22 June, 1926, the members of the city council of Greensboro, by a vote of five to two, directed the execution of such deed after being advised that they held title to such property only as trustees, and, as to the disposition thereof, were subject to the direction of such board of trustees of said Greensboro special charter school district.

6. Said deed was not actually executed, either by the city of Greensboro or by the board of trustees of such special charter school district, until 25 June, 1926, and was not placed of record until 29 June, 1926.

7. The charter of the special charter school district (comprising the territory embraced in the corporate limits of the city of Greensboro previous to the extension thereof in 1923) has never been legally surrendered, and that such district was a special charter district on and after 25 May, 1926, and still constitutes a special charter district. Such special charter school district, by vote of the citizens resident thereof when the territory embraced therein constituted the corporate limits of the city of Greensboro, authorized the issuing of bonds of the par value of $1,000,000 for the purpose of purchasing sites, erecting buildings thereon and equipping the same for use as public schools. Such bonds were issued as obligations of the city of Greensboro as a municipal corporation and are still outstanding and constitute a lien upon the property situate in such special charter district, and both interest and principal thereof are only to be paid from taxes levied upon the property situate in said district.

8. Such special charter district owes a floating indebtedness of approximately the sum of $300,000.

9. On 8 April, 1926, the defendant, county board of education, attempted to create a school district in Guilford County designated as "Greater Greensboro School District," embracing within its bounds the territory embraced in said Greensboro special charter school district and the territory embraced in the white school district in Guilford County known as McAdoo Heights, McIver, Pomona Mills, Glendale, South Buffalo, and a part of a district known as Muir's Chapel District, and also the negro districts of Guilford County known as Jonesboro, McCarmel, Pomona, Terra Cotta and Jacksonville. Such alleged new district did not take in all of the new territory of the city of Greensboro as extended under the charter of the city of Greensboro as enacted by the General Assembly of 1923.

10. The county board of education alleges that it created said school district either by adopting or modifying a county-wide plan of organization of the schools of Guilford County, as provided for under chapter 136, Public Laws 1923, as amended.

11. The copy of the minutes of the county board of education attached as an exhibit to the complaint in this cause is a true and accurate copy of such parts of said minutes as they purport to be, and set out all that was ever done by said county board of education looking to the adoption of the county-wide plan of organization of the schools of Guilford County, except what is alleged to have been done by the county board of education on 19 May, 1923, and all that the minutes show in regard to what was done at that meeting in regard to the adoption of said county-wide plan is as follows:

"19 May, 1923. The board met at ten o'clock a. m. in joint session with the school committeemen of the county. All members of the county board present, except Dr. Peacock. At the joint meeting, the plans of the board of education with reference to school development in Guilford County were explained to the committeemen." Such copies of said minutes and exhibits attached to the complaint are made a part of these findings of fact as showing the actions therein referred to.

12. Said county board of education has never adopted the county-wide plan of organization for the schools of Guilford County in accordance with the provisions of the statutes passed in regard to such action.

13. There is set out in the copies of the minutes attached to the complaint in this cause all that the county board of education ever did with regard to the creation of the alleged greater Greensboro school district and in regard to petitioning for an election in such district to authorize the levying of a tax, in addition to all other taxes, of 30 cents on the $100 of property valuation for the maintenance of the schools in such

district and for the authorizing of the issuing and selling of bonds of the par value of $2,300,000 to purchase sites for, erect buildings on and equip such buildings for school purposes in such district, and to levy taxes to pay interest upon said bonds and to create a sinking fund for the retirement of such bonds at maturity.

14. There is set out in the copies of the minutes of the board of county commissioners of Guilford County attached as an exhibit to the complaint in this cause, all that such board ever did in regard to ordering held and auditing the returns of such election.

15. Said elections were ordered held 25 May, 1926, and previous to such time and at such time the property in the Greensboro special charter school district was subject to a maintenance tax of 50 cents on the $100 of property valuation, and in the official notice of said election, a copy of which is attached to the complaint in this cause, the voters in said district were notified that the voting of a maintenance tax of 50 cents at the election on 25 May, 1926, would repeal the authority to levy the maintenance tax of 50 cents theretofore authorized and levied in said special charter district.

16. There were more registered, qualified voters for said election of 25 May, 1926, resident of said Greensboro special charter district than all the other territory added to such special charter territory by the alleged creation of the greater Greensboro school district.

17. No notice was given the voters resident in said Greensboro special charter district that the school property of said district was to be conveyed, and that the same was not actually conveyed until more than thirty days after said election.

18. The county board of commissioners provided for said election twelve voting precincts, only three of which comprised territory exclusively outside said Greensboro special charter district, and in that territory there were 1,294 registered voters, of which only 379 voted in favor of the levying of the 30 cents maintenance tax, and 392 voted in favor of the issuing of the $2,300,000 bonds. There was no evidence that a majority of the voters in the territory outside said Greensboro special charter district voted either in favor of the levying of such maintenance tax or the issuing of such bonds.

19. The conveying of the property belonging to such Greensboro special charter district on 25 June, 1926 (said deed being recorded 29 June, 1926) was done only with the idea that the greater Greensboro school district had been legally constituted, and that the charter of said district had been legally surrendered, and that the county-wide plan had been legally adopted, and such school district having not been legally constituted and such charter not legally repealed, and such county-wide plan not legally adopted, the county board of education holds said prop-

erty as trustees for the city of Greensboro, and should be required to reconvey the same to such city.

20. There was no notice given the school trustees and committeemen of Guilford County of the meeting of the county board of education held 8 April, 1926, by mailing notice to such committeemen and trustees, serving notice upon such committeemen or trustees, or publishing a notice thereof in a newspaper published in Guilford County.

21. The elections of 25 May, 1926, were not held in a legally constituted district and are, therefore, void and of no effect.

Upon the foregoing facts judgment was rendered perpetually restraining the defendants from issuing all or any part of the bonds alleged to have been authorized by the election of 25 May, 1926 ($2,300,000), from collecting any tax by virtue of said election, and from exercising dominion or control over the public schools in the special charter district, and directing the county board of education to execute and deliver to the city of Greensboro a deed reconveying the property conveyed to the county board of education by the city and the board of education of the special charter district on 25 June, 1926.

The defendants excepted, assigning error, and appealed.

*Brooks, Parker & Smith for plaintiffs.*
*John N. Wilson, A. Wayland Cooke, and Chester B. Masslich for defendants.*

ADAMS, J. For several years prior to 15 March, 1923, the corporate limits of the city of Greensboro formed a square, the center of which was the center of the intersection of Elm and Market streets, the sides being each two miles in length, cutting at right angles imaginary lines drawn north, south, east, and west from the center, and enclosing an area of four square miles. This area, it is admitted, constituted a special charter district in the public school system of Guilford County. Private Laws 1911, ch. 2, sec. 19 *et seq.* In 1917, pursuant to C. S., 2903, the city adopted a new charter, in which it was provided that the city should continue to be an independent school district and as such should have exclusive control of the public free schools within the corporate limits as they were then prescribed and as they might subsequently be extended, and that the board of education should be charged with the duty of erecting buildings and maintaining an adequate system of schools within the district. The legal title to the school property was vested in the city. Some time in the same year (1917) in an election duly held there was authorized by the vote of a majority of the qualified voters of the city a maximum property tax of fifty cents on the one hundred dollars valuation of property, to be used for the mainte-

nance of the public schools within the district, and this tax has since been annually levied and collected. Also, there was authorized by a like vote an issuance of bonds in the sum of one million dollars, the proceeds of which were to be used in acquiring land and erecting suitable buildings and equipping them for school purposes. These bonds were issued and sold as the obligation of the city of Greensboro (*Duffy v. Greensboro,* 186 N. C., 470), and the city has annually levied a tax to pay the interest and to retire the serial bonds as they mature. The plaintiffs allege that the special charter district owes in addition a floating debt of about $300,000 and that no provision has been made for assuming or paying this indebtedness; but in reply the defendants aver that the General Assembly has provided that this obligation "shall be and remain" the indebtedness of this particular district. Private Laws 1923, ch. 37, secs. 31, 32, 91. This act, in like manner with the charter adopted in 1917, continued the old city limits as an independent school district under the name of the "Greensboro School District."

In 1921 the whole of Guilford County, save the special charter district and High Point Township, was made a special school taxing district (Public-Local Laws 1921, ch. 131; Public-Local Laws 1921, Ex. Ses., ch. 38); and in 1922 a majority of the qualified voters therein authorized the annual levy and collection of a tax not exceeding twenty-five cents on the one hundred dollars valuation of property situated within the territory. This tax also has been regularly collected.

At the session of 1923 the General Assembly enacted a series of statutes, effective on 15 April, 1923, amending and codifying the laws relating to public schools, therein prescribing a method for the adoption of a county-wide plan of organization. Public Laws 1923, ch. 136, Art. VI; 3 C. S., 5481. The defendants allege that on 19 May, 1923, the county board of education in the exercise of authority conferred upon it by this act adopted a county-wide system or plan of organization and retained the plan until modified on 10 April, 1926, as a means of providing an adequate school system for the benefit of all the children of the county; but this allegation is specifically denied by the plaintiffs.

In a meeting held on 2 February, 1926, the board of county commissioners, pursuant to a request of the county board of education and in compliance with 3 C. S., 5663, ordered that an election be held on 30 March, 1926, to ascertain whether the voters of the county favored the levy of a special county tax not to exceed thirty cents on the one hundred dollars valuation of property to supplement the six months school fund and, if authorized, to be levied in lieu of the tax of twenty-five cents imposed in the special taxing district created under the act of 1921. The election was held, the returns were canvassed, and it was

declared that a majority of the qualified voters of the county had voted in favor of the proposed tax.

The plaintiffs allege that on 8 April, 1926, the county board of education attempted to create a new school district, which was to function on and after 1 July, 1926, including the special charter district and the territory embraced in several other districts; that on the same day the trustees of the special charter district formally requested the county board of education to assume full jurisdiction therein and directed the execution and delivery to this board of a release or quitclaim to all the school property therein situated. It is alleged by the plaintiffs that the proposed new district was never legally established and that the special charter district remains as it was originally created. This the defendants deny.

On 15 April, 1926, the board of county commissioners, in agreement with a resolution passed by the board of education on 8 April, ordered a special election to be held in the alleged new district on 25 May, for the purpose of submitting to the qualified voters thereof the two questions of authorizing a maintenance tax of thirty cents on the hundred dollars valuation of property in addition to all other taxes and of issuing bonds for the district in the sum of $2,300,000, and levying a tax in addition to all other taxes, sufficient to pay the interest and to provide a sinking fund for the payment of the respective bonds at maturity. The election was held, and it was formally determined that a majority of the qualified voters favored the taxes and the bonds.

This synopsis in connection with the findings of fact forms a background against which the assignments of error may be viewed; and as these assignments involve, not only inferences of law, but findings of fact, we may recall the rule that in appeals of this character the court is not concluded by the facts as found by the trial judge, but is at liberty to review the evidence and to determine the facts for itself—a rule none the less available because in the judgment of the court the findings of fact and the conclusions of law are in some instances apparently intermingled. *Howard v. Board of Education,* 189 N. C., 675; *Cameron v. Highway Commission,* 188 N. C., 84; *Lee v. Waynesville,* 184 N. C., 565.

One of the points on which the briefs exhibit wide divergence of reasoning relates to the alleged adoption of the county-wide plan of organization. The defendants say that it is immaterial whether or not the county board of education legally adopted the plan on 19 May, 1923, and thereafter continued it in effect as set forth in the affidavit of T. R. Foust, for the reason that a new plan, which was essential to the creation of the greater Greensboro school district, was legally adopted on 8 April, 1926; while the plaintiffs insist that there is no recorded

20—192

adoption of the system and that it never became effective. This disagreement invites an examination of the evidence on the point.

In several of its meetings, held on and after 7 November, 1925, the county board of education considered a petition requesting an extension of the city school district. The question was again presented in a meeting held 29 December, 1925. At that time the board of education was working under a county-wide plan, legal or otherwise, and it was concluded that an extension of the city school district—the old Greensboro school district—could not be effected without making a change in the "existing" plan. 3 C. S., 5481(2). Accordingly, in this meeting the county superintendent of public instruction exhibited a map of Guilford County, "showing the present location of each school district, the position of each, the location of roads, streams, and their natural barriers, the number of children in each district, and the size and condition of each school building in each district." This was in strict compliance with the statute. 3 C. S., 5481(1). Thereupon a plan "was prepared, indicating proposed changes so as to work out a more advantageous school system for the entire county"; it was filed with the secretary and marked, "Tentative modification of county-wide plan, 29 December, 1925." Before adopting the proposed plan the county board of education was required to call a meeting of all the school committeemen and the boards of trustees and to lay the plan before them for their advice and suggestions (3 C. S., 5481, sec. 2)—notice to those affected to be given by one publication, at least ten days before the meeting or hearing, in a newspaper published at the county seat, giving the hour, day, and place of the meeting or hearing and the purpose thereof, and by mailing to or serving notice upon all committeemen and trustees. Public Laws 1924, Ex. Ses., ch. 121, sec. 2. The county board of education called a meeting of all the committeemen and all the trustees to be held at ten o'clock on 16 January, 1926, to consider a modification of the county-wide plan. Notice that the meeting had been called and that the tentative plans contemplated the creation of a new school district was published in a newspaper and sent by registered mail to every committeeman and trustee in the county, as the statute requires. In the meeting not only the extension of the city school district was considered, but the "whole educational program" of the county. Objection was made that the extension of the city school district would result in removing taxable property from the county taxing district to the city district; but the election held on 30 March, 1926, removed this objection. Until the election was held the county board of education deferred action involving any change in the boundaries of the school districts. It was a few days thereafter, 8 April, that the board "took up the consideration of the adoption of the county-wide plan discussed

at the meeting on 16 January, 1926, and at the joint meeting held on 16 January, 1926, with the school trustees, committeemen and school patrons of the county" and resolved "that the existing county-wide plan or organization of schools be and is hereby changed and modified," as set forth in the resolution. If at this time there did not "exist" a county-wide plan which had been legally adopted, the board since 19 May, 1923, had proceeded on the theory that the plan was in practical operation and the repeated references in the minutes to the "existing plan" should be considered in the light of this fact. Moreover, the new plan affected every school district in the county. R. 36, 37, 38.

Against the legality of this procedure the appellees urge the contention that the provision for giving notice is mandatory and that no notice was given of the meeting held on 8 April. Whether under *Spruill v. Davenport,* 178 N. C., 364, and other cases, the direction is mandatory we need not now adjudge, for we do not concur in the appellees' interpretation of the statute requiring notice to be given. The act of 1923 (3 C. S., 5481) requires the board of education before changing the adopted plan to notify interested patrons and the committeemen whose advice is sought, and the act of 1924 (Ex. Ses., ch. 121) points out the method by which the notice shall be given; but this notification is designed to provide a hearing for the committeemen, trustees, and interested patrons before the modification or adoption of the county-wide plan. This in our judgment is the reasonable construction of the statutes. There is no machinery for adopting the plan in a joint meeting and no requirement that there shall be notification of the meeting at which the plan is to be adopted by the board of education. The joint meeting is advisory; the plan can be adopted only by the board. We conclude therefore that his Honor was in error in finding as a fact (twelfth paragraph of the judgment) that the county-wide plan had never been adopted. *Harrington v. Comrs.,* 189 N. C., 572; *Blue v. Trustees,* 187 N. C., 431.

Since the boundary lines of a school district can be changed only as the statute provides (C. S., 5481(2)), it is essential to determine whether the greater Greensboro school district was created in accordance with an adopted county-wide plan of organization.

The plaintiffs aver that the special charter district has never ceased to exist, and, indeed, that its charter could not legally be repealed under C. S., 5555 (School Law, sec. 157). Their argument on the latter proposition is based upon sections in the city's amended charter of 1917 and 1923 to the effect that the city is and shall continue to be an independent school district and shall have exclusive control of its public free schools. This position, they say, is fortified by the provision that

other school districts in the county may be changed in the manner provided by law. Their deduction is obvious: the special charter district is the creature of a local law which is inconsistent with and is neither modified nor repealed by the general law; the special charter district therefore is established and is not subject to change in like manner with other districts. They cite *Felmet v. Comrs.*, 186 N. C., 251, in which it is held that a local statute enacted for a particular municipality is intended to be exceptional, and is not repealed by the enactment of a subsequent general law. The opinion goes further: "Unless the repeal is provided for by express words or arises by necessary implication." Is not a definite repealing clause included in the School Code? This law went into effect on 15 April, 1923, and in "express words" repealed all laws in conflict with it, including those "passed by the General Assembly of 1923." Public Laws 1923, ch. 136, sec. 378. The repealing clause embraced the amendment of 1917 and that of 1923, which was effective from and after 15 March. Private Laws 1923, ch. 37, sec. 106. This clause points out the legislative purpose to repeal conflicting laws and to provide the means by which a special charter district, municipal or other, may surrender its charter rights and become a local tax district.

We advert now to the other proposition: that the special charter district has never ceased to exist. As we understand it, the plaintiffs' argument is this: Under section 157 (C. S., 5555) when the petition of the special charter district is accepted by the county board of education, the trustees of the special charter district must convey to the county board the title to all the school property; here the deed was not executed until 25 June, 1926, and was not recorded until 29 June; it is the registration of the deed which repeals the special charter; therefore the special charter was not repealed, if at all, until 29 June; if the charter was not repealed before that time the special charter district was not legally included in the greater Greensboro school district, and the attempted creation of this district was void. The situation, we grant, is not free from difficulty; but the argument, while not without force, in our judgment is not conclusive.

On 8 April, 1926, the board of education resolved: "That in accordance with the county-wide plan adopted 8 April, 1926, there be and hereby is created a new school district to be known as greater Greensboro school district, which shall begin to operate as such on 1 July, 1926," made up of the existing Greensboro school district and eleven other districts, together with a part of Muir's Chapel District. *Blue v. Trustees*, 187 N. C., 431. C. S., 5430, provides: "Whenever duties are assigned to the county board of education in this subchapter it shall not

be construed so as to take away from the board of trustees of any special charter district any duties or other powers assigned to said board of trustees by the General Assembly"; and the Court has said that special charter districts do not as a rule come within the compulsory regulations of the public school authorities unless and until they have surrendered their special charters according to the provisions of the school law. *Blue v. Trustees, supra; Sparkman v. Comrs.,* 187 N. C., 241. As indicated, the school law prescribes the method. 3 C. S., 5555; School Code, sec. 157.

Now, what was done? On the same day (8 April, 1926), the special charter district adopted a resolution requesting the county board of education to assume full jurisdiction of the Greensboro school district and directing the execution of a quitclaim deed conveying title to the school property. R. 39. Intending to form the new school district the board of education deferred final action, but requested its secretary meanwhile to secure the necessary conveyance of the property. It is alleged in the complaint and admitted that again on 22 June, 1926, the city council by a vote of five to two directed the conveyance to be made; but in making this order they were responding to legal advice that they held the title to the property only as trustees. In the resolution creating the greater Greensboro school district the board of education declared that it immediately came into being, but that it should "begin to operate as such on 1 July, 1926." It was deemed necessary to hold an election in the new district before the close of the fiscal year; to this end the new district must exist. The request that the county board of education should assume full jurisdiction of the special charter district manifested a purpose on the part of the board of trustees to surrender its charter rights. The trustees concluded that they no longer had control; that they were naked trustees; and that jurisdiction was then vested in the county board. The board of education, however, as suggested by the appellants, was in this dilemma: immediate acceptance would have been followed by immediate conveyance of the school property and immediate registration of the deed; the county board would then have been compelled to assume immediate control of the special charter district. This would have disarranged the schools in the special charter district and in other districts forming a part of the new district; it would have broken into the full term of the special charter district and would have left the new district without money for the remainder of the fiscal year; for the money raised by taxation in the special charter district could not have been used for the benefit of the new district. Apparently the only present escape from this predicament was in the course pursued

by the board of education: to make the necessary changes without trammeling some of the schools it proceeded on the principle that the special charter district, upon surrender of jurisdiction by the trustees, became an inchoate local tax district. However this may be, it brought into existence the new school district which should not "begin to operate as such" before the end of the fiscal year lest the hazard of deranged schools be incurred; it prescribed new boundary lines; it procured an election; it took other necessary steps. These measures, while not concurrent in time, were directed to a common end—the ultimate technical repeal of the special charter and the synchronous functioning of the new district. Every separate measure was a unit; the combined units were one transaction, the several components of a unified whole.

With respect to statutes construction is strict or liberal. Strict construction refuses to extend the import of words used in a statute so as to embrace cases or acts which the words do not clearly describe; liberal construction is that by which the letter of the statute is enlarged or restrained so as more effectually to accomplish the purpose intended. In this case we are convinced that the legislative intent calls for a liberal, comprehensive and rational construction of the statutes in question; and this construction leads to the conclusion that the special charter of the old city district did not function after the jurisdiction of the trustees was surrendered, and that the new district was lawfully created.

The plaintiffs refer to the defendants' allegation that the county board of education intended that the special charter district withdraw the surrender of its charter rights if the voters in the new district failed to vote the proposed tax and bonds. Whether the board of education could permit the trustees to withdraw the petition or whether it could be withdrawn without such permission is academic; the election was held and the tax and bonds were voted. With the mere motive of the county board in deferring action we are not concerned.

The validity of the election held on 25 May is questioned by the appellees on the ground that there was no separate vote in that part of the district which is outside the special charter district, and that it does not affirmatively appear that a majority of the voters in the outlying territory approved the proposition submitted. The cases of *Hill v. Lenoir County*, 176 N. C., 572, *Hicks v. Comrs.*, 183 N. C., 394, *Perry v. Comrs.*, ibid., 387, and *Barnes v. Comrs.*, 184 N. C., 327, were decided before the enactment of the school code. Public Laws 1923, ch. 136. We have held that the county-wide plan was duly adopted; these cases, then, are not pertinent. *Sparkman v. Comrs.*, supra, *Coble v. Comrs.*, 184 N. C., 342, and *Plott v. Comrs.*, 187 N. C., 125, dealt with special taxing

districts. *Harrington v. Comrs., supra,* applied or extended the doctrine to school districts created under an adopted county-wide plan of organization and must now be regarded as controlling on this point.

We think it unnecessary to dwell on the exception to the seventeenth finding of fact. There is nothing in the judgment to indicate that this finding had any appreciable bearing upon any of the conclusions of law, or that the voters did not know that the conveyance would be made, or, if they did not know, the effect of their ignorance on the election. The statute was constructive notice and no other notice was required. 3 C. S., 5555.

It is finally urged on behalf of the plaintiffs that the judgment should be upheld because in the creation of the new district no provision was made for the indebtedness of the special charter district or the special taxing district. It is not clear that the judge considered this question, though it is a subject of discussion in the briefs.

We have referred to the provision that all obligations of the special charter district shall be and remain the indebtedness of the district. In the notice of the election held on 25 May, 1926, was the following: "The voting of the maintenance tax will repeal the maintenance tax heretofore voted and levied for the old Greensboro school district, but not any tax required by law for payment of outstanding indebtedness nor will it affect the county-wide maintenance tax of not exceeding thirty cents voted 30 March, 1926."

The territory in the old city district is still liable for the floating indebtedness of the district ($300,000) and for the bond issue of a million dollars, the obligation of the city. See School Code, sec. 5. With the repeal of the special charter the old city district became a local tax district (School Code, 157) subject to sec. 228, which prohibits its abolition while it is in debt. The statutes formulating the county-wide plan have no provisions for existing debts; but section 238 of the School Code, dealing with special taxing districts, confers upon the county board of education authority to assume all the indebtedness, bonded or otherwise, of a local tax or special charter district. The county board was not obliged to assume such indebtedness and did not do so; we must therefore conclude that the property originally affected remains liable. *Plott v. Comrs.,* 187 N. C., 125; *Coble v. Comrs., supra.*

After giving to the entire record, the briefs, and the oral argument our careful and deliberate consideration, we are of opinion that all the exceptions taken by the appellants should be sustained and that the judgment of the Superior Court should be and it is hereby

Reversed.