SCHOOL DISTRICT COMMITTEE *v.* BOARD OF EDUCATION.

*Comr. of Revenue,* 229 N.C. 313, 49 S.E. 2d 754; 3 Sutherland, Stat. Constr., 3d Ed., 293.

"In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." *Gould v. Gould,* 245 U.S. 151, 62 L. Ed. 211.

The language used in G.S. 105-220 and related sections of our sales and use tax Act, when so construed, compels the conclusion that the court below erred in sustaining the tax levied against the total cost to plaintiff of the right to broadcast transcriptions furnished it under contract as set forth in its second cause of action.

We have examined the decisions cited by defendant to which we have made no specific reference. None of them are sufficiently pertinent to the question here presented to require discussion.

The judgment entered in the court below on each cause of action must be

Reversed.

GATES SCHOOL DISTRICT COMMITTEE, COMPOSED OF M. R. TAYLOR, JOHN H. WIGGINS AND R. G. OWENS, AND THE FOLLOWING INDIVIDUALLY, J. R. FREEMAN, J. N. EURE, L. J. HAYES, HARRY EURE, D. G. FREEMAN, L. T. HARRELL AND HOWARD EURE, CITIZENS, RESIDENTS AND TAXPAYERS AND PATRONS OF THE ABOVE NAMED SCHOOL DISTRICT HAVING CHILDREN ASSIGNED TO AND ATTENDING THE SCHOOL OF SAID DISTRICT, AS PUPILS, v. THE BOARD OF EDUCATION OF GATES COUNTY, COMPOSED OF S. P. CROSS, CHAIRMAN, AND MRS. MARIAN NIXON AND LAMAR BENTON, AND W. C. HARRELL, GATES COUNTY SUPERINTENDENT OF PUBLIC INSTRUCTION.

(Filed 5 March, 1952.)

**1. Schools § 3a—**

The county board of education has the power, with the approval of the State Board of Education, to consolidate for administrative or attendance purposes a special tax district having no supplemental levy with a non-special tax district without the approval of the voters of the non-special tax district, G.S. 115-99. Such consolidation does not involve a tax, since the boundaries of the special tax district remain.

**2. Same—**

Where a district having a supplemental tax to provide a higher standard of schools than provided by State support is consolidated with a non-special tax district, the supplemental levy may not be collected unless approved by a majority of the qualified voters of the non-special tax district.

**3. Same—**

Since a supplemental tax to provide a higher standard of schools than provided by State support may be levied only in districts having a school population of five hundred or more, G.S. 115-361, the question of a supplemental levy does not arise upon the consolidation of a special tax district having no supplemental levy with a non-special tax district when the consolidated district has a school population of less than five hundred pupils, the consolidation being made under the general law, G.S. 115-99, and not under G.S. 115-192 or G.S. 115-361.

APPEAL by defendants from *Frizzelle, J.,* at Chambers in Washington, North Carolina, 8 October, 1951; from GATES.

The pertinent evidence adduced in the trial below and bearing on the question of consolidating school districts, may be summarily stated as follows:

1. Prior to 28 April, 1948, Gates County was divided into four school attendance districts. None of these districts had theretofore authorized the levying of a local tax for any purpose. On the above date, Sunbury School District of Gates County was created under the provisions of Chapter 279, Public-Local Laws of 1937 as amended by Chapter 149, Session Laws of 1947, and subsequent thereto the voters therein approved a bond issue for school purposes, and the levying of a tax for the payment of the interest thereon and for the retirement of the bonds as they may fall due.

2. On 28 August, 1949, the State Board of Education directed that certain elementary and high school children living in the Gates School District should attend the Sunbury school and that the remainder of the high school students in the Gates district be transferred to Gatesville High School. The remainder of the elementary students (approximately 75 in number) were directed to attend the school theretofore operated as a union school at Gates.

3. On 3 July, 1950, the Gatesville School District was created under the provisions of Chapter 279, Public-Local Laws of 1937, as amended by Chapter 149 of the Session Laws of 1947, and the voters in said district subsequent thereto approved a bond issue of $125,000 for the construction of a high school building and gymnasium at Gatesville which buildings are now under construction and expected to be completed and ready for occupancy before the end of the 1951-1952 school term.

4. The school building at Gates was constructed in 1925 and is a one-story building consisting of ten classrooms and an auditorium, and is a class "C" building. This building, subsequent to an inspection made on or about 23 April, 1951, by an engineer from the Insurance Department of the State of North Carolina and by an engineer and architect from the Division of School House Planning of the Department of Public Instruction of the State of North Carolina, was condemned by the Insur-

ance Department as being unsafe for use as a school building. The plaintiffs offered evidence tending to show that the building could be put in satisfactory condition by the expenditure of not more than $11,000. The defendants offered evidence tending to show it would cost from $35,000 to $50,000 to make the repairs recommended by the engineer of the Engineering Division of the Insurance Department.

5. On 28 August, 1951, the County Board of Education of Gates County passed a resolution consolidating certain districts as hereinafter pointed out, for the following reasons: "Since the Insurance Commission has condemned the Gates School building and since the Division of School House Planning and Surveys has recommended that the school building be abandoned and the pupils transported to the Gatesville School, the Gates County Board of Education is unable to work out any alternative except to transport the children to Gatesville School." Whereupon, the Board passed a resolution consolidating all that portion of Gates School District, consisting of approximately two-thirds thereof in area, by metes and bounds, with the Gatesville School District, and the remainder thereof, in which area both high school and elementary pupils have been attending Sunbury school since 1949, with the Sunbury School District. These consolidations were approved by the State Board of Education on 6 September, 1951.

6. It is disclosed by the record that the average daily attendance for the Gates elementary school, consisting of the first eight grades, was 69.6 pupils during the 1950-1951 school term; that for the term the aggregate cost of janitorial service, electric current, and fuel, amounted to $17.93 per child in average daily attendance at the Gates school, and that these items cost a total of only $6.85 per child in average daily attendance in the other schools in Gates County; and that since the consolidation and transfer of the children from the Gates school to the Gatesville school, the cost of janitorial service, electric current, and fuel at the Gatesville school for the 1951-1952 term, will not be greater than for the 1950-1951 term; that prior to the aforesaid consolidation and transfer of school children from Gates school and for the 1950-1951 term, the State Department of Public Instruction allotted only two teachers to Gates school which was composed of the first eight grades, and that two other teachers were provided at said school by the Gates community, and that each of the four teachers teaching in the Gates school for the 1950-1951 term, were forced and required, of a necessity, to teach two full grades or classes, and that it is not a desired practice that a North Carolina school teacher have the responsibility for more than one grade or class.

7. It appears from the affidavit of the principal of Gatesville school that including the children transferred from the Gates school, the Gatesville school now has 288 children enrolled in the elementary department

of the school and 104 in the high school department; that the State of North Carolina has allotted to the Gatesville school all the teachers to which it is entitled, based upon the average daily attendance of the school, which allotment includes the two teachers heretofore allotted by the State to the school at Gates; that there are no combination classes in the elementary grades; and that the new high school building and gymnasium which are under construction on the Gatesville school site, will provide classrooms and facilities which will make for greater convenience and comfort; that the present Gatesville school building is not overcrowded, unsafe, or unfit for the housing and teaching of the student body presently enrolled in said school.

8. It appears from affidavits filed by the plaintiffs that the consolidation has required children to leave their homes earlier in the day and to return home later in the afternoon than was the case when they attended the Gates school. It appears, however, from the affidavit of the County Superintendent of Public Instruction, that the consolidation has resulted in no change in the routing of school buses in Gates County; that prior to the said consolidation and transfer of children, the school buses transporting children to Gates school were required to arrive at the Gates school in ample time to unload the school children so that the high school children from the Gates community could be reloaded on a school bus and transported to the Gatesville school in time for the opening of the Gatesville school each day, at the same hour that the Gates school opened, and that children attending the Gates school were required to wait in the afternoon until the high school children living in the Gates area could be transported from Gatesville to Gates after the close of school each day before the children attending the Gates school could be transported to their homes, with the result that considerably more time was required to transport the children living in the Gates community to and from their homes than has been required since the consolidation and transfer of the children to Gatesville.

The court found as a fact that the Gatesville and the Sunbury districts were special tax districts and that the Gates district was a non-special tax district, at the time of the attempted consolidation, and that the voters in the non-special tax district had not approved the consolidation. Upon this finding, the court held that the defendant Board was without power and authority in law to order the consolidation of a special tax district and a non-special tax district. The court, thereupon, entered an order restraining the defendant from continuing the attempted consolidation and abandoning the operation of the Gates school. The order, however, to go into effect only after a reasonable time for making the necessary repairs to the Gates school building. The cause was retained for further orders of the court.

The defendants excepted to this order and appealed to the Supreme Court, assigning error.

*Godwin & Godwin for defendant, appellant.*

*John A. Wilkinson and H. S. Ward for plaintiff, appellee.*

*Attorney-General McMullan and Assistant Attorney-General Love for the State Board of Education, Amicus Curiae.*

DENNY, J.   A non-special school tax district may be consolidated with a special tax district, without the approval of the voters of the non-special tax district when the consolidation is for administrative or attendance purposes only and does not involve a supplemental tax.

In the case of *Board of Education v. Bray,* 184 N.C. 484, 115 S.E. 47, which involved the consolidation of a special tax district with three non-special tax districts for the purpose of creating a new special tax district, *Stacy, J.* (later *Chief Justice*), in speaking for the Court, said: "Indeed, for the bare purpose of consolidation, no election is necessary under the general law. C.S. 5473. The county board of education in any county may, however, in its discretion, ask for an election on the question of consolidation or the new formation of a district, and submit the question of a special tax or the issuance of bonds at the same time, but it is not required to do so. C.S. 5526."

It will be observed that the general law, C.S. 5473, with respect to the consolidation of school districts, at the time the above case was decided, read as follows: "The county board of education is hereby authorized and empowered to redistrict the entire county or any part thereof and to consolidate school districts wherever and whenever in its judgment the redistricting or the consolidation of districts will better serve the educational interests of the township, or the county, or any part of the county."

The essential parts of the above statute, now codified as G.S. 115-99, are still in full force and effect. It has been amended, however, so as to require the approval of the State Board of Education whenever school districts are consolidated; and to provide that "existing schools having suitable buildings shall not be abolished until the county board of education has made ample provisions for transferring all children of said school to some other school in the consolidated district." *Kreeger v. Drummond, ante,* 8, 68 S.E. 2d 800.

The appellees argue and contend that the attempted consolidation complained of herein is violative of the provisions contained in G.S. 115-192 and G.S. 115-361.

The consolidation, pursuant to the resolution passed by the Board of Education of Gates County on 28 August, 1951, and approved by the State Board of Education on 6 September, 1951, could have the effect

only of consolidating a portion of the Gates non-special tax district with the area contained in the Gatesville special tax district for administrative or attendance purposes.

It should be kept in mind that the provisions contained in G.S. 115-192 were enacted at a time when there were practically no restrictions on the power of a school district to vote special taxes for bonds or supplemental purposes. Now, a supplement may not be voted in a school district unless it is an administrative unit that contains a school population of five hundred (500) or more. And since the present school enrollment of the Gatesville school, including the children transferred from the Gates school, is less than four hundred, the provisions, with respect to a special tax for supplemental purposes, contained in G.S. 115-192 or in G.S. 115-361, have no bearing on the present consolidation.

School districts created by the county boards of education of the various counties of the State, subject to the approval of the State Board of Education, exist for administrative or attendance purposes only. G.S. 115-99 and G.S. 115-352. Special tax districts, for the purpose of issuing bonds or voting a supplemental tax, must comply with certain statutory requirements not essential for the creation of an administrative unit. G.S. 115-192 and G.S. 115-361; Chapter 279, Public-Local Laws of 1937, and the amendments thereto.

It is true that where an administrative unit has voted a supplemental tax in order to operate schools of a higher standard than that provided by State support in an administrative unit having a school population of 500 or more, pursuant to the provisions of G.S. 115-361, neither a nontax district nor any part thereof may be consolidated with such administrative or tax districts, without losing the right to levy its then existing supplemental tax (*Bivens v. Board of Education,* 187 N.C. 769, 122 S.E. 846), unless an election is held in the territory to be added and the majority of those who voted in such election voted in favor of the proposed tax. And the tax authorized must be equal to the supplemental tax previously authorized in the administrative unit, including any tax levied therein to meet the interest and sinking fund of any bonds theretofore issued by the district proposed to be enlarged. *Perry v. Comrs.,* 183 N.C. 387, 112 S.E. 6; *Hicks v. Comrs.,* 183 N.C. 394, 112 S.E. 1; *Barnes v. Comrs.,* 184 N.C. 325, 114 S.E. 398; *Vann v. Comrs.,* 185 N.C. 168, 116 S.E. 421; *Blue v. Trustees,* 187 N.C. 431, 122 S.E. 19.

A tax of this character cannot be levied in this State unless it has been approved by a majority of the voters who voted in favor of such tax in an election duly held as provided by law in the area in which the tax is to be levied. Consequently, when an area is consolidated with an administrative unit that has voted a supplemental tax and no election has been held in the area added to or consolidated with such administrative unit,

then no supplemental tax can be legally levied in any part of the consolidated area. *Perry v. Comrs., supra; Bivens v. Board of Education, supra.*

The consolidation complained of herein, however, does not involve a tax. The consolidation was not effected pursuant to the terms of the act under which the special tax district was created for the purpose of issuing bonds, but under the general law, G.S. 115-99. The boundaries of the special tax district remain the same and the local tax duly authorized therein for the payment of the principal and interest on its bonds, is in no way jeopardized or affected by the consolidation. Furthermore, the taxpayers in this special tax district are not protesting the consolidation.

If it should be held as a matter of law that a consolidation for administrative or attendance purposes, such as that involved herein, could not be made, then in many instances, no doubt, county boards of education and the State Board of Education would be compelled to maintain numerous small elementary schools contrary to the established policy of the State with respect to consolidation. The wisdom of that policy is not involved in this appeal, but only the interpretation of the law with respect to the power of the Board of Education of Gates County, with the approval of the State Board of Education, to make the consolidation involved in this action.

In view of the conclusion we have reached, the restraining order entered in the court below will be dissolved, and the cause is remanded for such other and further proceedings as may be necessary for a proper disposition of the case not inconsistent with this opinion.

Error and remanded.